IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HANNAH CRAMER and JESSICA BLAKLEY, individually and on behalf of all other persons similarly situated who were employed by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE and/or any other entities affiliated with or controlled by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE; and WILLIAM ANDREAS PYLIARIS,<br><br>                                        Plaintiffs,<br><br>v.<br><br>ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE and/or any other entities affiliated with or controlled by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE; and WILLIAM ANDREAS PYLIARIS,<br><br>                                        Defendants. | **Case No.:** 3:18-cv-00039-HEH |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Named Plaintiffs Hannah Cramer and Jessica Blakely, by their attorneys, Beins, Axelrod, P.C. and Virginia & Ambinder, LLP, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b), to recover unpaid minimum wages, overtime, illegally retained gratuities, and other unlawful deductions owed to the Named Plaintiffs and all similarly situated persons (collectively "Plaintiffs") who are presently or were formerly employed by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE and/or any other entities affiliated with or controlled by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE; and WILLIAM ANDREAS PYLIARIS, individually (hereinafter collectively referred to as "Defendants") as entertainment employees.

2. Defendants operate a single integrated business, consisting of adult entertainment establishments throughout the Richmond, Virginia metropolitan area operating under the names "Club Rouge," "Daddy Rabbits," "Candy Bar," "Paper Moon (Scott's Addition)," "Paper Moon (Southside)," and "Pure Pleasure" (hereinafter collectively referred to as "the Clubs").

3. Throughout Plaintiffs' employment, Defendants single integrated enterprise has jointly employed Plaintiffs, who performed work at the Clubs.

4. The enterprise is owned and centrally controlled by individual Defendant William Andreas Pyliaris.

5. In addition to central ownership and management, all of the Clubs implement the same employment policies and practices, such as requiring Plaintiffs pay "house fees," adhere to the same dress code, share gratuities and pay fines. All of the Clubs comprise the Mid-Atlantic Showclubs, utilize the same or similar advertising and promotional events, have the same or similar signage, and maintain websites and an Instagram account that advertise the locations for all Clubs.

6. Plaintiffs perform the same basic job duties, are subject to the same employment policies and practices, and are directed and/or engaged by Defendants to perform work at multiple Clubs.

7. Defendants regularly deprive Plaintiffs of their rights under federal wage and hour laws, including their right to be paid proper minimum wages, their right to be paid proper overtime compensation, their right to keep customer gratuities, and their right to work without paying "house fees" and other mandatory fees and fines.

8. This lawsuit seeks to compel Defendants to pay Plaintiffs all wages they have earned and to allow them to keep all gratuities and recover other unlawful deductions, as federal law requires.

9. Beginning in approximately January 2015 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of failing to pay Plaintiffs minimum wages and overtime compensation as required by applicable federal law.

10. Beginning in approximately January 2015 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of imposing or improperly deducting "fines," "fees," and miscellaneous improper surcharges from Plaintiffs'.

11. Beginning in approximately January 2015 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of unlawfully

retaining Plaintiffs' tips.

12. Beginning in approximately January 2015 and, upon information and belief, continuing through the present, Defendants did not monitor and/or record the actual hours worked by Plaintiffs.

13. Under the direction of William Andreas Pyliaris, Defendants instituted the practice of depriving Plaintiffs of minimum wages, overtime compensation, failing to remit gratuities, and making improper deductions from Plaintiffs' wages, in violation of federal law.

14. Defendants have applied the same employment policies, practices and procedures to all Plaintiffs that worked for Defendants, at all of the Clubs.

15. Plaintiffs have initiated this action seeking for themselves, and on behalf of all similarly situated employees, all compensation, including unpaid minimum wages, overtime, illegally retained gratuities, and other unlawful deductions, plus interest, damages, attorneys' fees, and costs.

## JURISDICTION

16. Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §1331 and 1337.

## VENUE

17. Venue for this action in the Eastern District of Virginia under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia.

## THE PARTIES

18. Named Plaintiff HANNAH CRAMER is an individual who was formerly employed by Defendants as an entertainment employee.

19. Named Plaintiff JESSICA BLAKLEY is an individual who was formerly employed

by Defendants as an entertainment employee.

20. Upon information and belief, Defendant Arkesia, Inc. d/b/a Club Rouge is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 1501 East Main Street, Richmond, Virginia 23219, and is engaged in the adult entertainment business.

21. Upon information and belief, Defendant Circle 2, Inc. d/b/a Daddy Rabbits is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 3206 Broad Rock Boulevard, Richmond, Virginia 23224, and is engaged in the adult entertainment business.

22. Upon information and belief, Defendant Circle 2, Inc. d/b/a Candy Bar is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 218 East Main Street 2nd Floor, Richmond, Virginia, 23219, and is engaged in the adult entertainment business.

23. Upon information and belief, Defendant Imaginary Images, Inc. d/b/a Paper Moon is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 3300 Norfolk Street, Richmond, Virginia 23230, and is engaged in the adult entertainment business.

24. Upon information and belief, Defendant BTF3 LLC d/b/a Paper Moon is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 6710 Midlothian Turnpike, Richmond, Virginia 23225, and is engaged in the adult entertainment business.

25. Upon information and belief, Defendant M.G.B., Inc. d/b/a Pure Pleasure is a business corporation incorporated under the laws of the State of Virginia, with its principal place of business located at 68 Labrook Concourse A, Richmond, Virginia 23224, and is engaged in the

adult entertainment business.

26. Upon information and belief, Defendant WILLIAM ANDREAS PYLIARIS is a resident of 5306 West Grace Street, Richmond, Virginia 23226, and is, and at all relevant times was, an officer, director, president, vice president, and/or owner of the Clubs.

27. Defendants jointly employed Plaintiffs and similarly situated employees at all relevant times.

28. Defendants have had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

29. Defendants are part of a single integrated enterprise that jointly employed Plaintiffs at all relevant times.

30. Defendants' operations have been and are interrelated and unified at all relevant times.

31. Defendants centrally controlled the labor relations of the Clubs.

32. At all relevant times, the Clubs were owned and operated by Defendant William Andreas Pyliaris.

33. During all relevant times, Defendants have transferred and/or permitted employees to be shared by and between the Clubs without retraining.

34. At all relevant times, Defendants have maintained control, oversight, and direction over Plaintiffs, including payroll and other employment practices.

35. At all relevant times, all of the Clubs applied and still apply the same employment policies, practices, and procedures to Plaintiffs, including with respect to overtime compensation, minimum wage compensation, unlawful tip retention practices, and improper deductions from wages.

36. Upon information and belief, under 29 U.S.C. § 201, *et seq.*, and the cases

interpreting same, the Clubs constitute "enterprise[s] engaged in commerce."

37. Upon information and belief, Defendants annual gross volume of sales made or business done is not less than $500,000.00.

38. Defendants constitute employers within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d).

39. Upon information and belief, Plaintiffs and all members of the putative collective constituted "employees" as that term is defined by 29 U.S.C. § 203(e).

40. The payments made by Defendants to Plaintiffs, and gratuities received by Plaintiffs constitute "wages."

41. Customers routinely paid gratuities to the Plaintiffs.

42. Upon information and belief, Defendants personally retained part of these gratuities.

## **COLLECTIVE ALLEGATIONS**

43. Named Plaintiffs reallege and incorporate by reference all the allegations set forth above.

44. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

45. This action is brought on behalf of Named Plaintiffs and a putative collective consisting of similarly situated entertainment employees who performed work for Defendants between January 2015 and the present.

46. Named Plaintiffs and potential plaintiffs who elect to opt-in as part of the collective action are all victims of Defendants' common policy and/or plan to violate the FLSA by failing to pay minimum wages, overtime wages, unlawfully retaining employees' tips and making improper deductions from employee wages. Named Plaintiffs' claims stated herein are essentially the same

as those of the other members of the FLSA collective.

47. Defendants' policies and practices were and are applicable to Named Plaintiffs and putative collective members.

48. Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative collective.

49. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual Named Plaintiffs and putative collective members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A collective action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants' policies and practices.

50. Named Plaintiffs and putative collective members are readily ascertainable, can be located through Defendants' records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

51. Named Plaintiffs and putative collective members have suffered and will continue suffer damages from Defendants' unlawful pay practices.

52. Defendants willfully and intentionally failed to properly compensate Named Plaintiffs and putative collective members.

## **FACTS**

53. Upon information and belief, beginning in or about 2015, Defendants employed numerous individuals at the Clubs as entertainment employees.

54. Plaintiff Hannah Cramer worked for Defendants as an entertainment employee at Club Rouge and Pure Pleasure from approximately August 2015 through December 2017.

55. Plaintiff Cramer typically worked four shifts per week, from approximately 9:00 p.m. to 3:00 a.m. On some occasions, Plaintiff Cramer worked until approximately 7:00 a.m.

56. Accordingly, Plaintiff Cramer typically worked approximately 24 hours per week..

57. Plaintiff Cramer was required to pay a "house fee" for each shift that she worked for Defendants. The amount of the fee was approximately $15.00 for weekday shifts and $30.00 for weekend shifts.

58. Plaintiff Cramer routinely received tips from customers.

59. Plaintiff Cramer was required to share her tips with other employees of Defendants who had little or no interaction with customers.

60. Plaintiff Cramer was also subject to improper wage deductions and fines by Defendants for, *inter alia*, showing up late to work, leaving early, not showing up for a scheduled shift, and not wearing appropriate attire, among other conditions.

61. Plaintiff Jessica Blakley worked as an entertainer at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addition," Paper Moon "Southside," and Baby Dolls from approximately 2012 through 2017.

62. Plaintiff Blakley typically worked 4-5 shifts per week, from approximately 10:30 a.m. to 5:00 p.m. Approximately 2-3 days per week, Plaintiff Blakley also worked a second shift from approximately 9:30 p.m. to 3:00 a.m. Occasionally, Plaintiff Blakley worked until approximately 4:00 a.m.

63. Accordingly, Plaintiff Blakley typically worked more than 40 hours a week.

64. Plaintiff Blakley was required to pay a "house fee" for each shift that she worked for Defendants. The amount of the fee varied based on the shift and the day of the week.

65. Plaintiff Blakley routinely received tips from customers.

66. Plaintiff Blakley was required to share her tips with other employees of Defendants who had little or no interaction with customers.

67. During Named Plaintiff Blakley's employment with Defendants, she was not paid

any hourly wages or overtime compensation for the hours that she worked beyond forty in any given week and was permitted to keep only a portion of her earned tips.

68. Plaintiff Blakley was also subject to improper wage deductions and fines by Defendants for, *inter alia*, showing up late to work, leaving early, not showing up for a scheduled shift and not wearing appropriate attire, among other conditions.

69. For example, during her employment, Plaintiff Blakley was fined for, among other things, arriving to her shift late, missing a shift, leaving a shift early, using her cell phone on the main floor, yelling at the D.J. from the stage, working less than four shifts in a week, and refusing champagne sales and/or persuading customers not to buy champagne.

70. Approximately six times per year, Plaintiff Blakley and other entertainers were required to do "promos" for the Clubs for which they were not paid any wages. These included, but were not limited to, car washes, the "Entertainer of the Year" event, the "Richmond Race" event, and traveling by party bus to different nightclubs to recruit other entertainers.

71. Upon information and belief, Defendants engaged in a regular pattern and practice of making deductions from the earned wages of Plaintiffs, and/or otherwise fining Plaintiffs and other members of the putative collective for reasons other than those allowed under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.52, in violation of said sections. These deductions *include but are not limited to* deductions from gratuities provided by Defendants' patrons in violation 29 U.S.C. § 203(m), 29 C.F.R. §§ 531.52, 531.53, and 531.54, "house fees," and other improper deductions and fines.

72. Like Named Plaintiffs, the members of the putative class were not paid any hourly wages or overtime for the hours that they worked for Defendants, were permitted to keep only a portion of their earned tips and were subject to improper wage deductions and fines.

73. Upon information and belief, Defendants willfully disregarded and purposefully

evaded recordkeeping requirements of the FLSA by failing to maintain proper and complete employment records such as timesheets or payroll records.

74. Upon information and belief, Defendant William Andreas Pyliaris was an officer, director, shareholder, and / or president or vice president of the Clubs, and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) determined the rate and method of payment for Defendants' employees; and (iv) maintained employment records for the Clubs.

75. Upon information and belief, Defendant William Andreas Pyliaris dominated the day-to-day operating decisions of the Clubs, made major personnel decisions for the Clubs, and had complete control of the alleged activities of the Clubs which give rise to the claims brought herein.

76. For example, at the direction of Defendant William Andreas Pyliaris, Defendants required Plaintiffs and members of the putative collective to work a minimum of four shifts per week and follow a dress code. Defendants also had the power to, and did, fine Plaintiffs and members of the putative collective for violations of documented Club rules, adjust Plaintiffs' work schedules, discipline Plaintiffs and members of the putative collective, and terminate them.

77. Defendant William Andreas Pyliaris terminated Named Plaintiff Blakley from her employment with the Clubs.

78. Upon information and belief, Defendant William Andreas Pyliaris was a supervisor, officer and/or agent of the Clubs, who acted directly or indirectly in the interest of the Clubs, and is an employer within the meaning of the FLSA. William Andreas Pyliaris, in his capacity as an officer, director, shareholder, and / or president or vice president, actively participated in the unlawful method of payment for the Clubs' employees.

79. Upon information and belief, Defendants operate a single integrated enterprise, that

jointly employed or employs Plaintiffs (the "Clubs").

80. Defendants operations are interrelated and united within the Clubs.

81. Individual Defendant William Andreas Pyliaris maintained centralized control over all labor relations and operation of the Clubs, and exercise common management, ownership and/or financial control.

82. The Clubs are collectively grouped and advertised as the Mid-Atlantic Showclubs.

83. Defendants maintain several websites for each of the Clubs and an Instagram account that reference or refer to all of the Clubs, and advertise the Clubs as part of the Mid-Atlantic Showclubs.

84. All of the Clubs required and still require Plaintiffs to dress in accordance with the same dress code, required Plaintiffs to pay house fees, and subjected Plaintiffs to the same rules and fines.

85. Upon information and belief, "Misty Bell" is the Chief Operating Officer for all of the Clubs.

86. During the relevant period, Misty Bell advertised and posted on her public Facebook account information, photos and advertising for all of the Clubs.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS:**
**FLSA MINIMUM WAGE COMPENSATION**

87. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 87 hereof.

88. Pursuant to 29 U.S.C. § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: **(1)** except as otherwise provided in this section, not less than— **(A)**

$5.85 an hour, beginning on the 60th day after May 25, 2007; **(B)** $6.55 an hour, beginning 12 months after that 60th day; and **(C) $7.25** an hour, beginning 24 months after that 60th day."

89. Further, pursuant to 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

90. Plaintiffs and other members of the putative class are employees, within the meaning contemplated in Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(e).

91. The Clubs constitute employers within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d).

92. Pursuant to 29 U.S.C. § 203(d) and the cases interpreting the same, William Andreas Pyliaris constitutes an "employer" for the purpose of FLSA and, consequently, is liable for violations of FLSA.

93. Upon information and belief, Defendants failed to pay Plaintiffs and other members of the putative collective all earned minimum wages for all of the time they worked for Defendants in any given week.

94. The failure of Defendants to pay Plaintiffs and other members of the putative collective their rightfully owed wages was willful.

95. By the foregoing reasons, Defendants are liable to Plaintiffs and members of the putative collective in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

### SECOND CAUSE OF ACTION AGAINST DEFENDANTS: FLSA OVERTIME COMPENSATION

96. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 95

hereof.

97. Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

98. Further, pursuant to 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

99. Plaintiffs and other members of the putative class are employees, within the meaning contemplated in Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(e).

100. The Clubs constitute employers within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d).

101. Pursuant to 29 U.S.C. § 203(d) and the cases interpreting the same, William Andreas Pyliaris constitutes an "employer" for the purpose of FLSA and, consequently, is liable for violations of FLSA.

102. Upon information and belief, Defendants failed to pay Plaintiffs and other members of the putative collective all earned overtime wages, at the rate of one and one half times the regular rate of pay, for the time in which they worked after the first forty hours in any given week.

103. The failure of Defendants to pay Plaintiffs and other members of the putative collective their rightfully owed wages and overtime compensation was willful.

104. By the foregoing reasons, Defendants are liable to Plaintiffs and members of the

putative collective in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### SINGLE INTEGRATED ENTERPRISE AND/OR JOINT EMPLOYER

105. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 104 hereof.

106. Upon information and belief, Defendants operate a single integrated enterprise consisting of the Clubs, which jointly employed and/or employ Plaintiffs during the relevant time.

107. Defendants' operations are interwoven and united across all Clubs, making up the single interrelated enterprise.

108. Defendants exercise central control of labor relations, and subject all Plaintiffs to the same employment policies, procedures and payment schemes.

109. Defendants use common management in running their single integrated enterprise and centrally set policies for all Clubs.

110. The same Individual Defendant financially controls and owns all of the Clubs.

111. As a single related enterprise, Defendants are jointly responsible for all violations cited in this complaint.

**WHEREFORE**, Plaintiffs, individually and on behalf of all other persons similarly situated demand judgment:

(1) on their first cause of action against Defendants, in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs;

(2) on their second cause of action against Defendants, in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest,

attorneys' fees and costs;

(3) on their third cause of action against Defendants, in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees, and costs;

(4) any other and further relief the Court may deem appropriate.

JURY TRIAL IS DEMANDED

Dated: Washington, DC
February 26, 2018

                      Respectfully submitted,

                      _____/s/_____
                      Justin P. Keating
                      VA Bar #75880

                      BEINS, AXELROD, P.C.
                      1030 15th Street, N.W.
                      Suite 700
                      Washington, DC 20005
                      Tel: (202) 328-7222
                      Fax: (202) 328-7030
                      jkeating@beinsaxelrod.com


                      Lloyd R. Ambinder (*Pro Hac Vice* Admission)
                      LaDonna Lusher (*Pro Hac Vice* Admission)
                      Michele Moreno (*Pro Hac Vice* Admission)
                      VIRGINIA & AMBINDER, LLP
                      40 Broad Street, 7th Floor
                      New York, New York 10004
                      Tel:   (212) 943-9080
                      Fax:  (212) 943-9082

                      **ATTORNEYS FOR PLAINTIFFS**
                      **AND PUTATIVE COLLECTIVE**