**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **HANNAH CRAMER and JESSICA BLAKLEY, individually and on behalf of all other persons similarly situated who were employed by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE and/or any other entities affiliated with or controlled by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE; and WILLIAM ANDREAS PYLIARIS,** | |
| Plaintiffs, | Case No. 3:18-cv-00039 |
| v. | |
| **ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE and/or any other entities affiliated with or controlled by ARKESIA, INC. d/b/a CLUB ROUGE; CIRCLE 2, INC. d/b/a DADDY RABBITS; CIRCLE 2, INC. d/b/a CANDY BAR; IMAGINARY IMAGES, INC. d/b/a PAPER MOON; BTF3 LLC d/b/a PAPERMOON; M.G.B., INC. d/b/a PURE PLEASURE; and WILLIAM ANDREAS PYLIARIS,** | |
| Defendants. | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE PLAINTIFFS' AMENDED COMPLAINT
AS TO THE FLSA COLLECTIVE ACTION</u>**

COMES NOW Defendant Circle 2, Inc. d/b/a Daddy Rabbits ("Daddy Rabbits"), by and through the undersigned legal counsel, and pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of its Motion to Strike Amended Complaint as to the FLSA Collective Action.

## I.     **INTRODUCTION**

In the Complaint, Plaintiffs fail to provide any factual allegation as to how they are similarly-situated to other proposed putative class members. Plaintiffs merely state in conclusory fashion that they and the putative class members are similarly situated. This critical pleading flaw is sufficient grounds to strike Plaintiffs' collective action claim. Plaintiff should not be permitted to convert their individual claims into a collective action by merely pleading that some unspecified policy or practice caused them and some other entertainers not to be compensated at or above minimum wage.

Further, the boundaries of this alleged putative class are completely undefined. Plaintiffs allege that all non-exempt "entertainment" employees are similarly situated. Plaintiffs fail to identify how other entertainer positions at entirely different locations with different duties, schedules and hours of work are somehow similarly-situated to their own. To the extent the Plaintiffs are attempting to bind other putative class members as "similarly situated" on the basis that they were all subject to the same unidentified policy(s) which somehow resulted in them not receiving "overtime," Plaintiffs' Amended Complaint is also deficient.

For these reasons and those set forth in more detail below, Defendant moves to strike those portions of the Complaint, which are not appropriate to the pled collective action.

## II. PLAINTIFFS' FACTUAL ALLEGATIONS

1. On February 26, 2018, Plaintiff Hannah Cramer ("Plaintiff Cramer") and Plaintiff Jessica Blakley ("Plaintiff Blakley") (collectively "Plaintiffs") filed a First Amended Class Action Complaint ("Amended Complaint") alleging that Defendants Arkesia, Inc. d/b/a Club Rouge ("Club Rouge"); Circle 2, Inc. d/b/a Daddy Rabbits ("Daddy Rabbits"); Circle 2, Inc. d/b/a Candy Bar ("Candy Bar"); Imaginary Images, Inc. d/b/a Paper Moon ("Imaginary Images"); BTF3 LLC d/b/a Papermoon ("BTF3"); M.G.B., Inc. d/b/a ("Pure Pleasure"), "And/Or Any Other Entities," and William Andreas Pyliaris (collectively "Defendants") failed to pay overtime and minimum wage.

2. Specifically, in the Amended Complaint, the named Plaintiffs allege three causes of action asserting failure to pay minimum wages in violation of the Fair Labor Standards Act ("FLSA"), failure to pay overtime wages in violation of the FLSA, and joint employer obligation.

3. Between August 2015 and December 2017, Plaintiff Cramer asserts that she worked as an "entertainment employee" for Club Rouge and Pure Pleasure. Compl. at ¶ 54.

4. Plaintiff Cramer asserts she *typically* worked four shifts a week, from 9:00 p.m. to 3:00 a.m., and *occasionally* worked until 7:00 a.m. *Id.* at ¶ 55 (emphasis added).

5. Plaintiff Cramer asserts she *typically* worked approximately twenty-four hours per week. *Id.* at ¶ 56 (emphasis added).

6. Without distinguishing between the two entities, Plaintiff Cramer then calculates hours worked by aggregating alleged hours worked for each of the individual Defendants.

7. Between 2012 and 2017, Plaintiff Blakley asserts she worked as an "entertainer" at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addiction," Paper Moon "Southside," and Baby Dolls. *Id.* at ¶ 61.

8. Plaintiff Blakley asserts she *typically* worked four to five shifts a week, from 10:30 a.m. to 5:00 p.m. and approximately two to three shifts per week; from 9:30 p.m. to 3:00 a.m. *Id.* at ¶ 62 (emphasis added).

9. Plaintiff Blakley further alleges that she *occasionally* worked until 4:00 a.m. *Id.* (emphasis added).

10. Plaintiff Blakley asserts that she *typically* worked more than forty hours per week. *Id.* at ¶ 63 (emphasis added).

11. Without distinguishing between the different entities, Plaintiff Blakley then calculates alleged hours worked by aggregating hours worked for each of the individual Defendants, as well as Baby Dolls, which is not a party to this suit. *Id.*

12. In the Amended Complaint, Plaintiff Cramer does not allege that she worked for or performed at Daddy Rabbits, Candy Bar, Imaginary Images, and BTF3. Likewise, Plaintiff Blakley fails to allege that she worked at Candy Bar. See Amended Complaint.

13. In the Amended Complaint, Plaintiffs do not name Baby Dolls as a party. See Amended Complaint.

### III. LEGAL ARGUMENT

#### A. STANDARD OF REVIEW

Rule 12(f) permits courts to strike any immaterial or impertinent matter from a pleading. Fed. R. Civ. P. 12(f). "Where pleadings are facially defective and definitively establish that a class action cannot be maintained, the court can properly grant a motion to strike class allegations at the pleadings stage." *Baker* v. *Home Depot USA, Inc.,* No. 11 C 6768, 2013 U.S. Dist. LEXIS 9377, at *12 (N.D. Ill. Jan. 24, 2013) (internal quotation omitted). Ultimately, the purpose of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious

issues by dispensing with those issues prior to trial." *Buser v. S. Food Serv.*, 73 F. Supp. 2d 556, 559 (M.D.N.C. 1999).

In the context of FLSA collective actions, the District Court in *D'Anna v. M/A-Comm, Inc.*, explained that

> "[a]s a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists. . . . The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.

903 F. Supp. 889, 894 (D. Md. 1995) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)). Moreover, while some "court-authorized notice has been issued based solely upon allegations of class-wide discrimination in a complaint… many courts have required some factual support for the allegations prior to authorization of notice." *Id.* at 893 (citing *Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995); *Severtson*, 137 F.R.D. at 266; *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), *aff'd* in part and dismissed in part, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989)).

B.  **PLAINTIFFS CANNOT BE CLASS REPRESENTATIVES FOR THE FLSA COLLECTIVE ACTION**

In the Amended Complaint, Plaintiffs fail to sufficiently establish the requirements for certification of a FLSA collective action. An employee bringing a collective action under Section 16(b) must show that the Plaintiffs and the remaining class members are similarly situated. When determining whether the Plaintiffs have satisfied the "similarly situated" requirement, Courts consider a variety of factors including:

(a)  similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct;

      (b)      the extent to which the plaintiffs will rely on common evidence;
      (c)      defenses available to defendant and whether the defenses are individual to each plaintiff; and
      (d)      fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party.

*Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007). Moreover, the Court should avoid engaging in an "individualized analysis of overtime compensation" because it "runs directly counter to the 'economy envisioned by' collection treatment of substantially similar employees under §216(b) of the FLSA." *Saxton v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1189 (N.D. Ala. 2006). Undoubtedly, the "necessity for independent inquiries into each alleged violation makes collection action likely to hinder rather than promote judicial economy." *Macgregor v. Farmers Ins. Exchange*, No. 2:10-CV-03088, 2011 U.S. Dist. LEXIS 80361, at *8 (D.S.C. July 22, 2011).

     A critical component of the certification analysis is an assessment of whether Plaintiffs have provided evidence of a company-wide policy, which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007). For example, in *Sodekson v. E. Coast Rest. & Nightclubs, LLC*, Civil Action No. 4:15-CV-02711-RBH, 2016 U.S. Dist. LEXIS 119886, at *26–27 (D.S.C. Sep. 6, 2016), the Court found that the Plaintiff did not have "any additional factual support suggesting that there is a common policy or plan among the Gold Club's several locations, or that there are other potential plaintiffs similarly situated to her." Moreover, the "Plaintiff only worked at the Bedford, New Hampshire location for a few months, while Ms. Kaneshige only worked at the Hilton Head, South Carolina location." *Id.* As a result, the "Plaintiff has not provided any facts regarding the several other locations or any factual support evidencing the policies at these other clubs." *Id.*

Other Courts have also found multi-location collective actions troublesome. *See Cason v. Vibra Healthcare*, 2011 U.S. Dist. LEXIS 47160, *9 (E.D. Mich. May 3, 2011) (stating that a Plaintiff's experience at one location "does not justify the conditional certification of a collective action against several . . . facilities . . . Although the standard for granting conditional certification is lenient, it is not that non-existent."); *see also Pullen v. McDonald's Corp.*, 2014 U.S. Dist. LEXIS 128364 (E.D. Mich. Sept. 15, 2014) (refusing to certify FLSA collective action where evidence regarding location, pay, hours, and alleged violations varied between members of the putative class, including the fact that they "worked for different managers at different restaurants").

In the instant case, the Plaintiffs have not alleged that their interests are aligned with the putative class members. Between August 2015 and December 2017, Plaintiff Cramer alleges she was worked as an "entertainment employee" for Club Rouge and Pure Pleasure. Compl. at ¶ 54. Plaintiff Blakley alleges she worked as an "entertainer" at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addiction," Paper Moon "Southside," and Baby Dolls between *2012* and 2017 without specifying which locations she worked at during the two-year statute of limitations period of 2016-2017. *Id.* at ¶ 61. This particularly confusing given that Imaginary Images and BTF3 experienced a complete change of ownership during 2017. This is arguably an insurmountable issue for Plaintiffs as the alleged class representative because clubs are located in different areas, offer different themes and entertainment at each location, and also service different clientele as a result. In addition, the named Plaintiffs and alleged putative class members work for different corporations with different ownership, report to different management at each location, time periods employed, and work different shifts and hours at each of these locations. This makes the differing corporate entities, physical locations, and clubs worked at a critical element in the required class action analysis.

7

Accordingly, Plaintiffs cannot establish that their interests are aligned with those of the alleged putative class such that they are viable class representatives. Therefore, the Court should grant Defendant's Motion to Strike the class allegation.

C. **PERMITTING THIS ACTION TO PROCEED ON A CLASS/COLLECTIVE BASIS IS INAPPROPRIATE BECAUSE CERTIFICATION WOULD REQUIRE THIS COURT TO RULE ON THE MERITS TO DETERMINE PUTATIVE CLASS/COLLECTIVE MEMBERSHIP**

Determining membership in Plaintiffs' proposed collective action would require the Court to review the records and specific facts relevant to each putative member for an overly-broad group of alleged employees, and also to rule that each class/collective member was not paid for all hours worked or had improper deductions taken when they were employed by Defendant(s). The Court would need to rule on the merits of each claim; i.e., whether each individual putative collective member was subjected to some alleged policy or practice which resulted in that individual not being paid for hours and overtime worked and/or who had improper deductions made, to determine class/collective membership.

Requesting the Court to rule on the merits at the earliest stage of this litigation is inappropriate. Class certification is not appropriate where a fact-specific analysis of each individual Plaintiff's responsibilities would be required to determine liability. *See, e.g.*, *Harris v. Fee Transp. Servs., Inc.*, No. 3:05-cv-0077-P, 2006 U.S. Dist. LEXIS 51437, at *13–14 (N.D. Tex. May 15, 2006) (collecting cases and noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of [liability] would require a highly individualized inquiry"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (denying collective action where individualized inquiries required would obviate "the economy of scale envisioned by the FLSA collective action procedure"); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) ("Because the proof in this

8

case is specific to the individual, Mike has not provided evidence of a common thread binding his proposed class of employees."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) ("[a collective] action dominated by issues particular to individual plaintiffs cannot be administered efficiently"); *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("The individual nature of the inquiry required make[s] collective treatment improper in this case."); *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, at *7 (S.D. Tex. Apr. 11, 2006) (finding conditional certification inappropriate where differences among the potential plaintiffs predominated over their similarities); *Pfohl v. Farmers Ins. Group*, No. CV 03-3080 DT (Rcx), 2004 U.S. Dist. LEXIS 6447, at *10 (C.D. Cal. Mar. 1, 2004) ("[Liability] would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action"); *Smith v. Frac Tech Servs.*, LLC, No. 4:09CV00679 JLH, 2011 U.S. Dist. LEXIS 3165, at *54–55 (E.D. Ark. Jan. 11, 2011) (finding that "[b]ecause of the fact-intensive nature of the exemption analysis, the variation in the job duties of the service supervisors weighs heavily against permitting the action to continue as a collective one.").

Based on the pleadings in these cases, it is already evident that the Court will have to engage in an individualized inquiry for each Plaintiff. Thus far, this lawsuit has two named Plaintiffs who vary greatly in specific years of service and hours and locations allegedly worked. Between August 2015 and December 2017, Plaintiff Cramer alleges she worked as an "entertainment employee" for Club Rouge and Pure Pleasure. Compl. at ¶ 54. Regarding hours worked, Plaintiff Cramer alleges to *typically* work four shifts a week, from 9:00 p.m. to 3:00 a.m., and *occasionally*, work until 7:00 a.m. *Id.* at ¶ 55 (emphasis added). Per Plaintiff Cramer's

calculation, she *typically* worked approximately twenty-four hours per week. *Id.* at ¶ 56 (emphasis added).

While Plaintiff Blakley alleges she worked as an "entertainer" at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addiction," Paper Moon "Southside," and Baby Dolls between *2012* and 2017, which could mean primarily between 2012-2014, which is a time period well outside of the FLSA statute of limitations. *Id.* at ¶ 61. Regarding hours worked, Plaintiff Blakley alleges that she *typically* worked four to five shifts a week, from 10:30 a.m. to 5:00 p.m. and approximately two to three shifts a week, from 9:30 p.m. to 3:00 a.m. *Id.* at ¶ 62 (emphasis added). By her calculation, Plaintiff Blakley *typically* worked more than forty hours per week but never for a single corporate entity or necessarily within the time period of 2016-2017. *Id.* at ¶ 56 (emphasis added).

The purpose of a collective action is to economize and simplify individual actions, and that purpose would not be served where each Plaintiff's or Opt-In Plaintiff's records and alleged employment history, such as location of work, hours and weeks worked, supervision, etc., would have to be extensively analyzed and the legitimacy of any policy or practice that those individuals were/are allegedly subject to be decided before class/collective membership could be determined. Therefore, the Court should grant Defendant's Motion to Strike the FLSA Collective Action.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Strike the FLSA Collective Action.

Dated: March 12, 2018	Respectfully submitted,

**CIRCLE 2, INC. d/b/a DADDY RABBITS**

By: _____/s/_____
Thomas M. Lucas (VSB No. 27274)
Kristina H. Vaquera, Esq. (VSB No. 43655)
Milena Radovic, Esq. (VSB No. 91000)
Jackson Lewis, PC
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone:	(757) 648-1445
Facsimile:	(757) 648-1418
E-mail:	thomas.lucas@jacksonlewis.com
	vaquerak@jacksonlewis.com
	milena.radovic@jacksonlewis.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Justin P. Keating, Esq.
>Beins, Axelrod, P.C.
>1030 15th Street, N.W.
>Suite 700 East
>Washington, D.C. 20005

Notification of such filing will also be sent via First Class U.S. Mail to:

>Lloyd R. Ambinder, Esq.
>LaDonna Lusher, Esq.
>Virginia & Ambinder, LLP
>40 Broad Street, 7th Floor
>New York, New York, 10004

**CIRCLE 2, INC. d/b/a DADDY RABBITS**

By: _____/s/_____
Thomas M. Lucas (VSB No. 27274)
Kristina H. Vaquera, Esq. (VSB No. 43655)
Milena Radovic, Esq. (VSB No. 91000)
Jackson Lewis, PC
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone: (757) 648-1445
Facsimile: (757) 648-1418
E-mail: thomas.lucas@jacksonlewis.com
vaquerak@jacksonlewis.com
milena.radovic@jacksonlewis.com
*Counsel for Defendant*

4852-5385-5583, v. 1