**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **HANNAH CRAMER, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 3:18-cv-00039** |
| **ARKESIA, INC. d/b/a CLUB ROUGE, et al.,** | |
| **Defendants.** | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND JUDICIAL NOTICE PURSUANT TO SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT

COMES NOW Defendant BTF3 LLC d/b/a Papermoon ("BTF3" or "Defendant"), by and through the undersigned legal counsel, and files this Memorandum in Opposition to Plaintiffs' Motion for Conditional Collective Action Certification and Judicial Notice Pursuant to Section 216(b) of the Fair Labor Standards Act ("Motion for Conditional Collective Action Certification").

## I.     INTRODUCTION

As many dispositivie motions are pending before the Court, Plaintiffs' Motion for Conditional Collective Action Certification is premature.  In addition, in the Motion, the Plaintiffs fail to establish that they are similarly situated to the putative class members.  If the Court proceeds with this collective action at this time, it would be forced to engage in independent inquires for each individual named Plaintiff and Opt-In Plaintiff, which is inconsistenet with the purpose of a collective action.

Further, the Consent to Join Collective Action and Notice of Lawsuit inconsisently and incorrectly refers to Defendants Imaginary Images and BTF3.  Moreover, the Notice of Lawsuit

fails to inform potential Opt-Ins that they may be required to respond to interrogatories, requests for admissions, and requests for production of documents, sit for a deposition, and testify at trial

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

1.      On February 26, 2018, Plaintiff Hannah Cramer ("Plaintiff Cramer") and Plaintiff Jessica Blakley ("Plaintiff Blakley") (collectively "Plaintiffs") filed a First Amended Class Action Complaint ("Amended Complaint") alleging that Defendants Arkesia, Inc. d/b/a Club Rouge ("Club Rouge"), Circle 2, Inc. d/b/a Daddy Rabbits ("Daddy Rabbits"), Circle 2, Inc. d/b/a Candy Bar ("Candy Bar"), Imaginary Images, Inc. d/b/a Paper Moon ("Imaginary Images"), BTF3 LLC d/b/a Papermoon ("BTF3"), M.G.B., Inc. d/b/a Pure Pleasure ("Pure Pleasure"), and/or any other entities affiliated with or controlled by Arkesia, Inc. d/b/a Club Rouge, Circle 2, Inc. d/b/a Daddy Rabbits, Circle 2, Inc. d/b/a Candy Bar, Imaginary Images, Inc. d/b/a Paper Moon, BTF3 LLC d/b/a Papermoon, M.G.B., Inc. d/b/aPure Pleasure ("And/Or Any Other Entities"), and William Andreas Pyliaris (collectively "Defendants") failed to pay overtime and minimum wage.

2.      In their Amended Complaint, the named Plaintiffs allege Defendants failed to pay minimum wages, failed to pay overtime, and are a joint employers.

3.      On February 27, 2018, Plaintiffs filed Consents to Join Collective Action for Audriana Danielle Duvall, Ashley Cook, Brianna Hall, Caitlin Griggs, Deanna Danger, Deslie Crumpton, Eboni Scott, Emily Lacuesta, Evelyn Hartung, Ivy Mazza, Jessica L. Blakley, Jessica Williams, Kristen Conner, Kristimae McPherson, Meghan Musto, Sammy Minelli, Sonya T. Harris, Taylor Nicole Flanagan, Griselda Guzman, and Pamela Adams- Summons. *See* ECF No. 52-1.

4.      On March 12, 2018, Defendant Candy Bar filed a Motion to Dismiss Plaintiffs' Amended Complaint and Motion to Strike Plaintiffs' Amended Complaint as to the FLSA Collective Action.  *See* ECF. No 68, 74.

5.      On March 13, 2018, Plaintiffs filed a Consent to Join Collective Action for Quaocha Woody.  *See* ECF. No 86-1.

6.      On March 15, 2018, Plaintiffs filed a Consent to Join Collective Action for Mary Jo Bell.  *See* ECF. No 88-1.

7.      On March 28, 2018, Plaintiffs filed a Consent to Join Collective Action for Hannah Cramer.  *See* ECF. No 99-1.

8.      On April 2, 2018, Plaintiffs filed a Consent to Join Collective Action for Joanae N. Ncblett.  *See* ECF. No 105-1.

9.      On March 13, 2018, Plaintiffs filed a Motion for Conditional Collective Action Certification and Judicial Notice Pursuant to Section 216(b) of the Fair Labor Standards Act and a Memorandum of Law in Support of Motion for Conditional Collective Action Certification and Judicial Notice Pursuant to Section 216(b) of the Fair Labor Standards Act. *See* ECF. No 84–85.

10.      With the Memorandum of Law in Support of Motion for Conditional Collective Action Certification, Plaintiff filed declarations from Hannah Cramer, Jessica Blakley, Kristen Conner, Deanna Danger, Taylor Flanagan, Synclair Garnett, and Meghan Musto. *See* ECF. No 85-3–85-9.

### III.      LEGAL ARGUMENT

### A.      STANDARD OF REVIEW

A collective action under Section 216 of the FLSA "involves two stages: the notice or conditional certification stage and the decertification stage," with the "discovery process typically

[dividing] the two stages." *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2014 U.S. Dist. LEXIS 150043, at *6 (E.D. Va. Oct. 22, 2014). During "the first stage, the court decides whether to provide initial notice to potential collective action members." *Id.* At this stage, the Plaintiffs "carry the evidentiary burden at this stage, but it is 'fairly lenient' because the court often has only 'minimal evidence' without the aid of discovery." *Id.* Although it is a fairly lenient standard, "the 'similarly situated' requirement is not 'invisible'' — '[m]ere allegations will not suffice.'" *Id.* at 6–7 (quoting *Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2012 U.S. Dist. LEXIS 104573, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012)). Further, "[t]he primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Id.* (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008)). To proceed with a collective action, "[t]here must be sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Id.* (quoting *Houston*, 591 F. Supp. 2d at 832).

In the context of FLSA collective actions, the District Court in *D'Anna v. M/A-Comm, Inc.*, explained that

> "[a]s a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists. . . . The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.

903 F. Supp. 889, 894 (D. Md. 1995) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)). Moreover, while some "court-authorized notice has been issued based solely upon allegations of class-wide discrimination in a complaint…*many* courts have required

4

some factual support for the allegations prior to authorization of notice." *Id.* at 893 (citing *Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995); *Severtson*, 137 F.R.D. at 266; *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), *aff'd* in part and dismissed in part, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989)) (emphasis added).

## B.   PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION IS PREMATURE

On February 26, 2018, the named Plaintiffs filed their First Amended Complaint. *See* ECF No. 51. In response to the First Amended Complaint, the Defendant filed Motions to Dismiss the Amended Complaint and a Motion to Strike Plaintiffs' Amended Complaint as to the FLSA Collective Action on April 2, 2018. *See* ECF No. 68, 74.

On April 13, 2018, Defendants filed Motions to Compel Arbitration as pertains to the named Plaintiffs and numerous other Opt-In Plaintiffs. The Court should not certify the class because Plaintiff Hannah Cramer and Opt-In Plaintiffs Kristen Conner, Deanna Danger, Meghan Musto, Ashley Cook, Brianna Hall, Deslie Crumpton, Emily Lacuesta, Kristi McPherson, and Mary Jo Bell willingly entered into arbitration agreements with the named Defendants.

Moreover, in the Motion for Conditional Collective Action Certification and Consent to Join Collective Action, the Plaintiffs wrote, "Plaintiff request that the Court conditionally certify the following class of Opt-In Plaintiffs:  All individuals who work or have worked for…and/or any other entities affiliated with or controlled by Club Rouge, Daddy Rabbits, Candy Bar, Paper Moon (Scott's Addition), Paper Moon (Southside), and Pure Pleasure." ECF No. 84, ECF No. 85-1. However, an entity plead as "And/Or Any Other Entities" has not been served with this lawsuit or even identified and arguably this Court does not have jurisdiction over such an entity.  *See* ECF No. 82, 83. Plaintiffs should not be permitted to circumvent the Federal Rules of Civil Procedures requirements as identification and notice to a proper party.

As the Court has not yet ruled on the Motion to Dismiss the Amended Complaint, Motion to Motion to Strike Plaintiffs' Amended Complaint as to the FLSA Collective Action, and Motion to Compel Arbitration, the Plaintiffs' Motion for Conditional Collective Action Certification is premature and should be denied for these reasons.

## C.    <u>PLAINTIFFS FAIL TO ESTABLISH THAT THEY ARE SIMILARLY SITUATED</u>

In the Amended Complaint, Plaintiffs fail to sufficiently plead the requirements for certification of a FLSA collective action. An employee bringing a collective action under Section 16(b) must show that Plaintiffs and other putative class members are similarly-situated. When determining whether the Plaintiffs have satisfied the "similarly-situated" requirement, Courts consider a variety of factors, including:

    (a)      similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct;

    (b)      the extent to which the plaintiffs will rely on common evidence;

    (c)      defenses available to defendant and whether the defenses are individual to each plaintiff; and

    (d)      fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party.

*Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007). A critical element of the certification analysis is an assessment of whether Plaintiffs have provided evidence of a company-wide policy, which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

### 1.     **Independent Contractors**

Contrary to the Plaintiff's position that the entertainers were/are employees, the agreements that virtually all of them signed with the Defendants reflect that the entertainers exercised a

substantial degree of control over their terms and conditions.  *See* Exhibit 1–Exhibit 58 for Exhibit A, Decl. of Troy Poteet; Exhibit B, Decl. of Rachael Altice; Exhibit C, Dec. of Samantha Henshaw; Exhibit D, Decl. of Breanna Holt; Exhibit E, Decl. of Sharita Johnson; Exhibit F,  Decl. of Julee Harris; Exhibit G, Decl. of Sarah Darby; Exhibit H, Decl. of Fannie M. Reckard; Exhibit I, Decl. of Christyanne Siller, Exhibit J, Decl. of Jessica Wilson; Exhibit K, Decl. of Rachel Wilson; Exhibit L, Decl. of Amanda Coleman; Exhibit M, Decl. of Melissa Herring, Exhibit N, Decl. of Katherine Antle.

   In fact, when entertainers had the option of choosing between being an employee or an independent contractor/licensee, they chose to be an independent contractor/licensee; many citing their ability to control their schedule as the primary reason.  *See* Exhibit B–N. In fact, entertainers have the ability to perform at any establishment including those which are direct competitors to the named Defendants. *See* Exhibit B at ¶ 12; Exhibit C at ¶ 5; Exhibit D at ¶ 4; Exhibit E at ¶ 4; Exhibit F at ¶ 5; Exhibit G at ¶ 8; Exhibit H at ¶ 5; Exhibit I at ¶ 8; Exhibit J at ¶ 11; Exhibit K at ¶ 13; Exhibit N at ¶13.

### 2.      Locations Performed At

   In *Sodekson v. E. Coast Rest. & Nightclubs, LLC*, Civil Action No. 4:15-CV-02711-RBH, 2016 U.S. Dist. LEXIS 119886, at *26–27 (D.S.C. Sep. 6, 2016), at the certification stage, the Court found that the Plaintiff did not have "any additional factual support suggesting that there is a common policy or plan among the Gold Club's several locations, or that there are other potential plaintiffs similarly situated to her." Moreover, the "Plaintiff only worked at the Bedford, New Hampshire location for a few months, while Ms. Kaneshige only worked at the Hilton Head, South Carolina location." *Id.* As a result, the "Plaintiff has not provided any facts regarding the several other locations or any factual support evidencing the policies at these other clubs." *Id.* Other Courts

have also found multi-location collective actions troublesome. *See Cason v. Vibra Healthcare*, 2011 U.S. Dist. LEXIS 47160, *9 (E.D. Mich. May 3, 2011); *see also Pullen v. McDonald's Corp.*, 2014 U.S. Dist. LEXIS 128364 (E.D. Mich. Sept. 15, 2014).

In the instant case, the Plaintiffs have not sufficiently plead that their interests are aligned with the putative class members. Between August 2015 and December 2017, Plaintiff Cramer alleges she was worked as an entertainment employee for *only* Club Rouge and Pure Pleasure. Compl. at ¶ 54; *see also* ECF. No 85-3. Plaintiff Blakley alleges she worked as an entertainer at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addiction," Paper Moon "Southside," and Baby Dolls between *2012* and 2017. However, in her Declaration, Plaintiff Blakely alleges that she performed at "Pure Pleasure, Daddy Rabbit's, Paper Moon, Candy Bar…and Club Rouge…from approximately 2012 through 2017 as an entertainer/dancer" ECF. No 85-4 at ¶ 1. Plaintiff Blakely does not clarify which Paper Moon she performed for, Imaginary Images or BTF3. *See id.* It is undisputed that the two "Paper Moons" were not even owned by Defendant Pyliaris until mid-2017; at the end of the period for which she would apparently seek damages. *See* Exhibit A at ¶ 3. Although she alleges to have performed at "Baby Dolls", it is not a party to this suit. *See* Amended Compl.

In her Declaration, Opt-in Plaintiff Kristen Conner allegess that she "worked at Club Rouge. Daddy Rabbits, Pure Pleasure, Candy Bar, Papermoon, and Babydolls…from approximately *2000* to *2002* through approximately December 2016 as a dancer." ECF. No 85-5 at ¶ 1. Opt-in Plaintiff Conner does not clarify which "Papermoon" she performed for, Imaginary Images or BTF3. *See id.* Although she alleges to have performed at "Babydolls", it is not a party to this suit. *See* Amended Compl. In Comparison, Opt-in Plaintiff Deanna Danger alleges that she "worked at Pure Pleasure from approximately January 8, 2016 through approximately December

8, 2017 as a dancer." ECF. No 85-6 at ¶ 1. While Opt-In Plaintiff Taylor Flanagan alleges that she "worked at Club Rouge from approximately May 2016 through the end of January 2018 as a dancer." ECF. No 85-6 at ¶ 1. In her Declaration, Garnett alleges that she "worked at Daddy Rabbits, Candy Bar, and Pure Pleasure…from approximately January 2016 through approximately January 2018 as a dancer." ECF. No 85-6 at ¶ 1.

Finally, Opt-In Plaintiff Musto pleads that she "worked at Paper Moon…from approximately April 2015 through January 2018." ECF. No 85-9 at ¶ 1. Likely Plaintiff Blakely, Opt-In Plaintiff Musto does not clarify which Paper Moon she performed for, Imaginary Images or BTF3. *See id.* Moreover, it is undisputed that the two "Paper Moons" were not even owned by Defendant Pyliaris until mid-2017. *See* Exhibit A at ¶ 3

These Declarations contain confusing and conflicting allegations, especially given that Imaginary Images and BTF3 were under completely different ownership until mid-2017. *See* Exhibit A ¶ 3. This is arguably an insurmountable issue for Plaintiffs as the alleged class representative because the various clubs are located in different geographic areas, offer different entertainment, operated under different ownership, and have different clientele. In addition, the named Plaintiffs and alleged putative class members performed for different corporations, with different ownership, reported to different management at different locations, performed at different time periods, and performed at locations with different hours of operation. This makes the differing corporate ownership, physical location, and facilities performed at a critical element in the required collective action analysis. Accordingly, Plaintiffs cannot establish that their interests are aligned with those of the alleged and representative of the putative class members so that they are viable class representatives and that the class is similarly situated. Therefore, the Court should deny Plaintiffs' Motion for Certification.

### 3.      Alleged Rules of the Establishments

Further, Plaintiffs do not articulate in any detail the alleged rules that they must comply with in the past. Considering that the Plaintiffs allege that they were required to perform four times a week for the past two years, they should know the individual rules, policies, and facts concerning job duties, geographic location, and supervision for the different establishments.

In these Declarations, the named Plaintiffs and Declarants allege to varying degrees that the establishments required them that  tip specific club personnel, including the DJ, "VIP Host," "lap dance attendee," "door girls," "floor guys," and managers. ECF. No 85-3 at ¶ 9; ECF. No 85-4 at ¶ 7; ECF. No 85-5 at ¶ 9; ECF. No 85-6 at ¶ 6; ECF. No 85-7 at ¶ 11; ECF. No 85-8 at ¶ 7, ECF. No 85-9 at ¶ 9. However, Declarants do not consistently allege that they were required to tip the same individuals and each declaration drastically varies in these allegations. However, contrary to the Plaintiffs' position, they were not required to tip these individuals. In fact, the entertainers are not required to tip anyone but may do so *if they choose. See* Exhibit B at ¶ 14; Exhibit C at ¶ 9; Exhibit D at ¶ 9; Exhibit E at ¶ 6; Exhibit F at ¶ 8; Exhibit G at ¶ 9; Exhibit H at ¶ 9; Exhibit I at ¶ 10; Exhibit K at ¶ 15.

Plaintiffs' Declarations also plead that the different establishments required them to follow a dress code.  ECF. No 85-3 at ¶ 11c; ECF. No 85-4 at ¶ 11c; ECF. No 85-5 at ¶ 14b; ECF. No 85-6 at ¶ 8c; ECF. No 85-7 at ¶ 15b; ECF. No 85-8 at ¶ 11b; ECF. No 85-8 at ¶ 7, ECF. No 85-9 at ¶ 11c. However, Plaintiffs mischaracterize the requirement, as they were only required to comply with the Commonwealth of Virginia's ABC laws.[1] *See* Exhibit B at ¶ 16; Exhibit C at ¶ 12; Exhibit D at ¶ 12; Exhibit E at ¶ 8; Exhibit F at ¶ 10; Exhibit G at ¶ 12; Exhibit H at ¶ 11; Exhibit I at ¶ 13; Exhibit J at ¶ 21; Exhibit K at ¶ 17; Exhibit L at ¶10; Exhibit M at ¶15.

---

[1] *See* 3VAC5-50-140.

In fact, entertainers choose and pay for their own costumes, shoes, accessories, makeup, hair, and nails. *See* Exhibit B at ¶ 17–19; Exhibit C at ¶ 11; Exhibit D at ¶ 11–12; Exhibit E at ¶ 8–9; Exhibit F at ¶ 10; Exhibit G at ¶ 11–12; Exhibit H at ¶ 11; Exhibit I at ¶ 12; Exhibit J at ¶ 19–20; Exhibit K at ¶ 18–19; Exhibit L at ¶ 7; Exhibit M at ¶ 7 Exhibit N at ¶ 7.

The Plaintiffs' Declarations allege that the Defendants schedule them for certain shifts. ECF. No 85-3 at ¶ 12; ECF. No 85-4 at ¶ 8; ECF. No 85-6 at ¶ 9; ECF. No 85-7 at ¶ 16; ECF. No 85-8 at ¶ 12; ECF. No 85-8 at ¶ 7. Contrary to the Plaintiffs' position, entertainers designate their own schedules, a fact which is an incentive for choosing to be an independent contractor/licensee over employee. *See* Exhibit B at ¶ 6–7, 10; Exhibit C at ¶ 7; Exhibit D at ¶ 7; Exhibit E at ¶ Schedule; Exhibit F at ¶ 7; Exhibit G at ¶ 7; Exhibit H at ¶ 7; Exhibit I at ¶ 7–8; Exhibit J at ¶ 7–10; Exhibit K at ¶ 8–10, 12–16; Exhibit L at ¶ 5; Exhibit M at ¶ 5; Exhibit N at ¶ 5.

**D.    PERMITTING THIS ACTION TO PROCEED ON A CLASS/COLLECTIVE BASIS IS INAPPROPRIATE BECAUSE CERTIFICATION WOULD REQUIRE THIS COURT TO RULE ON THE MERITS TO DETERMINE PUTATIVE CLASS/COLLECTIVE MEMBERSHIP**

Determining membership in Plaintiffs' proposed collective action would require the Court to review the specific facts relevant to each putative class member for an overly-broad group. The Court would essentially need to rule on the merits of each individual claim; i.e., whether each putative collective member was subject to an alleged policy or practice which resulted in that individual not being paid for hours and overtime worked and/or who had improper deductions made, to determine class/collective membership.

The Court should avoid engaging in an "individualized analysis of overtime compensation" because it "runs directly counter to the 'economy envisioned by' collection treatment of substantially similar employees under §216(b) of the FLSA." *Saxton v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1189 (N.D. Ala. 2006). Undoubtedly, the "necessity for independent inquiries

into each alleged violation makes collection action likely to hinder rather than promote judicial economy." *Macgregor v. Farmers Ins. Exchange*, No. 2:10-CV-03088, 2011 U.S. Dist. LEXIS 80361, at *8 (D.S.C. July 22, 2011). Class certification is not appropriate where a fact-specific analysis of each individual Plaintiff's responsibilities would be required to determine liability. *See, e.g.*, *Harris v. Fee Transp. Servs., Inc.*, No. 3:05-cv-0077-P, 2006 U.S. Dist. LEXIS 51437, at *13–14 (N.D. Tex. May 15, 2006) (collecting cases and noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of [liability] would require a highly individualized inquiry").

Based on the pleadings, it is already evident that the Court will have to engage in an individualized inquiry for each Plaintiff. Thus far, this lawsuit involves two named Plaintiffs and twenty-one Opt-In Plaintiffs. However, from these Declaration it clear that they vary greatly in specific years of service, locations performed at, ownership of locations, hours performed, and the terms and conditions for their performances.

Between August 2015 and December 2017, Plaintiff Cramer alleges she worked as an entertainment employee for *only* Club Rouge and Pure Pleasure. Compl. at ¶ 54. Plaintiff Cramer alleges that she *typically* worked four shifts per week, from 9:00 p.m. to 3:00 a.m., and *occasionally*, work until 7:00 a.m. *Id.* at ¶ 55 (emphasis added); *see also* ECF. No 85-3 at ¶ 3–5. Per Plaintiff Cramer's calculation, she typically worked approximately *twenty-four hours* per week, but nonetheless purports to represent a class of entertainers seek *overtime* payments. *Id.* at ¶ 56 (emphasis added).

In the First Amended Complaint, Plaintiff Blakley alleges she worked as an entertainer at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon "Scott's Addition," Paper Moon "Southside," and Baby Dolls between *2012* and 2017, which could mean primarily between 2012-

2014, a time period well outside of the FLSA statute of limitations. *Id.* at ¶ 61. Further its equally clear that she performed at clubs with different corporate ownership during that time period; a time well before these entities were owned by Defendant Pyliaris. See Exhibit A at ¶ 3. Regarding hours worked, Plaintiff Blakley also alleges that she *typically* worked four to five shifts a week, from 10:30 a.m. to 5:00 p.m. and approximately two to three shifts a week, from 9:30 p.m. to 3:00 a.m. *Id.* at ¶ 62 (emphasis added). By her calculation, Plaintiff Blakley *typically* worked more than forty hours per week. *Id.* at ¶ 56 (emphasis added). However, in her Declaration, she only swears that "[d]uring *some* workweeks, I worked more than 40 hours per week." ECF. No 85-4 at ¶ 3. (emphasis added).

In her Declaration, Opt-in Plaintiff Kristen Conner pleads that she "worked at Club Rouge. Daddy Rabbits, Pure Pleasure, Candy Bar, Papermoon, and Babydolls…from approximately 2000 to 2002 through approximately December 2016 as a dancer." ECF. No 85-5 at ¶ 1. Opt-in Plaintiff Conner does not clarify which Papermoon she performed for, Imaginary Images or BTF3 and who it was owned by in the years she entertained at that location. *See id.* Although she alleges to have performed at "Babydolls", that entity is not a party to this suit. *See* Amended Compl. Opt-in Plaintiff Kristen Conner alleges that she "*typically* worked approximately five shifts per week, from 10:00 a.m. to 5:00 p.m., and *sometimes* stayed as late as 8:00 p.m. or 10:00 p.m." ECF. No 85-5 at ¶ 2. In her Declaration, she also alleges that she "*occasionally* worked more than one shift in a day" and "[d]uring *some* workweeks, [she] worked more than 40 hours per week." *Id.* at ¶ 3, 5 (emphasis added).

In Comparison, Opt-in Plaintiff Danger alleges that she only "worked at Pure Pleasure from approximately January 8, 2016 through approximately December 8, 2017 as a dancer," which is not consistent with the Plaintiffs and Opt-In Plaintiffs that allegedly performed for multiple

Defendants. ECF. No 85-6 at ¶ 1. In her Declaration, Opt-in Plaintiff Danger makes no allegations whatsoever regarding how many hours she performed. *See* ECF. No 85-6

Opt-In Plaintiff Musto pleads that she "worked at Paper Moon…from approximately April 2015 through January 2018," and she states that she "*typically* worked at least 4 shifts per week." *See* ECF. No 85-8 at ¶ 1, 3. She further pleads that her "shifts would *normally* start at 8:00 pm." and she "*typically* worked until 2:00 am on the weekdays, and 3:00 am on the weekends" *Id.*

The purpose of a collective action is to economize and simplify litigation, and that purpose would not be served if each Plaintiff's alleged employment history, work location, hours and weeks worked, supervision, etc., must be extensively analyzed and the legitimacy of any policy or practice that those individuals were/are allegedly subject to be decided before collective membership is determined. Therefore, the Court should grant Defendant's Motion to Strike the FLSA Collective Action.

**E.     PLAINTIFF'S NOTICE OF LAWSUIT IS INSUFFICIENT**

As the Court explained in *Butler v. DirectSAT USA, LLC*, "[t]he overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574–75 (D. Md. 2012) (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011)). In deciding whether a notice is accurate and timely, the trial court has "broad discretion in the 'details' of the notice." *Id.* at 574.

**1.     Notice Fails to Advise Potential Opt-Ins that They will be Required to Participate in Discovery and Testify at Trial**

In the Notice of Lawsuit, Plaintiffs fail to inform potential opt-ins that they will be required to participate in discovery and testify at trial.

14

Routinely, trial courts "accept[] text notifying potential plaintiffs 'of the possibility that they will be required to participate in discovery and testify at trial.'" *Byard v. Verizon W. Va., Inc., 287 F.R.D.* 365, 374 (N.D.W. Va. 2012) (quoting *Whitehorn.* 767 F.Supp.2d at 450). District Courts within the Fourth Circuit have upheld objections to notices for failure to provide this information. *See id.*, *Schmidt v. Charleston Collision Holdings Corp.*, No. 2:14-cv-01094-PMD, 2015 U.S. Dist. LEXIS 78324, at *25 (D.S.C. June 17, 2015); *Butler*, 876 F. Supp. 2d at 574–75. In *Schmidt*, the Court amended Plaintiff's proposed notice to include the following language, "If you elect to join this lawsuit, you may be required to provide information, give a deposition under oath, produce documents, respond to written interrogatories, and/or testify in Court, including trial." No. 2:14-cv-01094-PMD, 2015 U.S. Dist. LEXIS 78324, at *25.

In this case, Question 4 of the proposed Notice of Lawsuits asks, "What happens if I join the lawsuit?" ECF No. 85-2. In response, the Plaintiffs suggest, "If you choose to join this lawsuit, you will be bound by any ruling, settlement, or judgment. Your will also share in any proceeds from a settlement of judgment." *Id.* As written, the Notice of Lawsuit only informs potential opt-ins of the alleged benefits if they prevail but fails to disclose their duties and responsibilities as an opt-in plaintiff. Therefore, Plaintiffs' Notice of Lawsuit should inform potential opt-ins that they will be required to make their correct legal identities known to the Court in a public manner, respond to interrogatories, requests for admissions, and requests for production of documents, be the subject of a deposition, and testify at trial all under oath.

## 2. Plaintiffs' Consent to Join Collective Action and Notice of Lawsuit Create Confusion Regarding the Identity of the Named Defendants

Throughout the pleadings, Plaintiffs inconsistently and incorrectly refer to the Defendants Imaginary Images and BTF3 as "Paper Moon," "Papermoon," "Paper Moon (Scott's Addition)," and Paper Moon (Southside)." This inconsistent and incorrect pleading is present in the Motion

for Conditional Collective Action Certification, proposed Order, Memorandum in Support, Consent to Join Collective Action Notices of Lawsuit, and Declarations in support of Motion. Such continued, inconsistent and incorrect identification of the corporate Defendants will cause further confusion for potential opt-ins and the Court.

In the Notice of Lawsuit, Plaintiffs plead that the notice is "To: All current and former dancers employed at Club Rouge, Pure Pleasure, Daddy Rabbits, Paper Moon (Scott's Addition), Paper Moon (Southside), and/or Candy Bar." ECF No. 85-2. However, in the Consent to Join Collective Action, Plaintiffs write, "owed to me and other similarly situates employees employed by William Andreas Pyliaris; Club Rouge; Daddy Rabbits; Candy Bar; Paper Moon (Scott's Addition); Paper Moon (Southside); Pure Pleasure," but then write "and/or other entities affiliated with or controlled by William Andrea Pyliaris; Club Rouge; Daddy Rabbits; Paper Moon; or Pure Pleasure." ECF No. 85-1. Unlike the Consent to Join Collective Action, the Notice of Lawsuit contains no reference to "and/or other entities." In addition, in the Consent to Join Collective Action, the Plaintiffs refer to Paper Moon in two different ways in the same sentence, and in the second half of the sentence simply refer to a single entity known as "Paper Moon." *See id.* In addition, unlike the First Amended Complaint, Plaintiffs do not refer to the two establishments as "Paper Moon" for Defendant Imaginary Images and "Papermoon" for Defendant BTF3.  *See* ECF No. 51.

In the caption and preliminary statement of the First Amended Complaint, Plaintiffs reincorporated "Imaginary Images, Inc. d/b/a Paper Moon" and named "BTF3 LLC d/b/a Papermoon" as Defendants in the suit. *See* ECF No. 51. Later in the section labeled "Parties" in the First Amended Complaint, Plaintiffs plead "Defendant Imaginary Images, Inc. d/b/a Paper Moon is a business…with its principal place of business located at 3300 Norfolk Street, Richmond

Virginia 23230." *Id.* at ¶ 23. Regarding Defendant BTF3, Plaintiffs plead "Defendant BTF3 LLC d/b/a Paper Moon is a business…with its principal place of business located at 6710 Midlothian Turnpike, Richmond.  However, Plaintiff Blakley plead that she worked for "Paper Moon (Scott's Addition)" and "Paper Moon (Southside)." *Id.*

Plaintiffs filed Declarations filed Declarations in support of the Memorandum of Law Support of the Motion for Conditional Collective Action Certification.[2]  In her Declaration, Plaintiff Blakely alleges that she performed at "Pure Pleasure, Daddy Rabbit's, Paper Moon,

---

[2] In the Motion for Conditional Collective Action Certification, the Plaintiffs continue the incorrect and inconsistent pleadings. ECF No. 84. For example, in the fourth line of the Motion for Conditional Collective Action Certification the Plaintiffs plead "Imaginary Images, Inc. d/b/a Paper Moon" and "BTF3 LLC d/b/a Papermoon, but then in the subsequent line, they plead "and/or other entities affiliated with or controlled by Club Rouge, Daddy Rabbits, Candy Bar, Paper Moon, Paper Moon, or Pure Pleasure." *Id.* Within one sentence, the Plaintiffs refer to the entities into different ways, "Papermoon" and "Paper Moon." *See id.* In addition, in the second half of the sentence they fail to clarify which Paper Moon is Imaginary Images and which is BTF3. *See id.* Then, on page 2 of the Motion for Conditional Collective Action Certification "Plaintiff request that the Court conditionally certify the following class of Opt-In Plaintiffs:  All individuals who work or have worked for…Imaginary Images, Inc. d/b/a Paper Moon; BTF3 LLC d/b/a Paper Moon…and/or other entities affiliated with or controlled by Club Rouge, Daddy Rabbits, Candy Bar, Paper Moon (Scott's Addition), Paper Moon (Southside), and Pure Pleasure." *Id.* This is inconsistent with the first page of the Motion because it now refers to the parties as "Paper Moon (Scott's Addition)" and "Paper Moon (Southside)" without clarifying which entity is Imaginary Images and which is BTF3. With the Motion for Conditional Collective Action Certification, Plaintiffs filed a proposed Order, which contains the exact same inconsistent and incorrect pleadings. ECF No. 84-1. On page 2 of the Memorandum of Law in Support of the Motion for Conditional Collective Action Certification, Plaintiffs plead "Arkesia, Inc. d/b/a Club Rouge; Circle 2, Inc. d/b/a Daddy Rabbits; Circle 2, Inc. d/b/a Candy Bar; Imaginary Images, Inc. d/b/a Paper Moon; BTF3 LLC d/b/a Paper Moon," but then write "and/or other entities affiliated with or controlled by Club Rouge, Daddy Rabbits, Candy Bar, Paper Moon, or Pure Pleasure." With Defendant And/Or Entities it is unclear which "Paper Moon" Plaintiffs are referring to as they only plead one Paper Moon and have inconsistently utilized "Paper Moon" and "Papermoon." Moreover, this pleading is not consistent with the pleading in the First Amended Complaint or Motion for Motion for Conditional Collective Action Certification. In the line that follows, Plaintiffs plead  Defendants own and operate adult entertainment clubs in Richmond, including but not limited to: Club Rouge, Daddy Rabbits, Candy Bar, Paper Moon (Scott's Addition), Paper Moon (Southside), and Pure Pleasure. From the pleading, it is unclear which Paper Moon is Imaginary Images and which is BTF3.

Candy Bar…and Club Rouge…from approximately 2012 through 2017 as an entertainer/dancer" ECF. No 85-4 at ¶ 1. However, Plaintiff Blakely does not clarify which Paper Moon she performed for, Imaginary Images or BTF3. *See id.* In addition, she only references one establishment while her allegations in the First Amended Complaint reference both establishments. Similarly, in her Declaration, Opt-in Plaintiff Conner pleads that she "worked at Club Rouge. Daddy Rabbits, Pure Pleasure, Candy Bar, Papermoon, and Babydolls…from approximately 2000 to 2002 through approximately December 2016 as a dancer." ECF. No 85-5 at ¶ 1. Likewise, Opt-in Musto pleads that she performed at "Paper Moon." ECF. No 85-9 at ¶ 1. Neither Opt-in Plaintiff Conner nor Musto clarify which Papermoon or Paper Moon they performed for, Imaginary Images or BTF3. *See id.*

The named Plaintiffs and Opt-in Plaintiffs interchangeably refer to the entities as "Paper Moon," "Papermoon," "Paper Moon (Scott's Addition)," and "Paper Moon (Southside)". If the individuals already represented by counsel do not have a clear understanding of the different entities, how can the Court expect potential Opt-Ins to know the difference? In addition, Plaintiffs confuse the matter even further by using "Scott's Addition" and "Southside" as names for the entities. Although these are colloquial names, different entertainers use different names for the exact same establishment. For example, some entertainers refer to "Scott's Addition" as "Downtown."

Moreover, Paper Moon *is not* the correct name for either of the entities. Accordingly, the Court should not grant Plaintiffs' request to issue the proposed Consent to Join Collective Action and Notice of Lawsuit.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs'

Motion for Conditional Collective Action Certification.

Dated:  April 13, 2018                          Respectfully submitted,

                                                **BTF3 LLC d/b/a PAPER MOON**


                                                By: _____/s/_____
                                                Thomas M. Lucas (VSB No. 27274)
                                                Kristina H. Vaquera, Esq. (VSB No. 43655)
                                                Milena Radovic, Esq. (VSB No. 91000)
                                                Jackson Lewis, PC
                                                500 E. Main Street, Suite 800
                                                Norfolk, Virginia 23510
                                                Telephone:    (757) 648-1445
                                                Facsimile:    (757) 648-1418
                                                E-mail:       thomas.lucas@jacksonlewis.com
                                                              vaquerak@jacksonlewis.com
                                                              milena.radovic@jacksonlewis.com
                                                *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2018, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following:

Justin P. Keating, Esq.
Beins, Axelrod, P.C.
1030 15th Street, N.W.
Suite 700 East
Washington, D.C. 20005

Lloyd R. Ambinder, Esq.
LaDonna Lusher, Esq.
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, New York, 10004

**BTF3 LLC d/b/a PAPER MOON**


By: _____/s/_____
Thomas M. Lucas (VSB No. 27274)
Kristina H. Vaquera, Esq. (VSB No. 43655)
Milena Radovic, Esq. (VSB No. 91000)
Jackson Lewis, PC
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone:    (757) 648-1445
Facsimile:    (757) 648-1418
E-mail:    thomas.lucas@jacksonlewis.com
vaquerak@jacksonlewis.com
milena.radovic@jacksonlewis.com
*Counsel for Defendant*

4825-9814-6914, v. 1

20