## DECLARATION OF AMANDA COLEMAN

I, Amanda Coleman, do hereby affirm and say:

1. My name is Amanda Coleman, and I am over twenty-one (21) years of age, have never been convicted of a felony, and am otherwise fully competent to make this declaration and to testify in any court of law.  The facts herein are true and correct and based upon my personal knowledge.

2. I reside at REDACTED

3. I am an Independent Contractor and currently perform at Pure Pleasure Gentleman's Club ("Pure Pleasure" or "Club") located at 68 Labrook Concourse, Richmond, Virginia 23224.

4. On September 9, 2014, I signed a contract with the Club, reflecting my relationship with the Club as a licensee and temporary space lessee.  A copy of the executed contract is attached hereto as Exhibit A.  I performed at the Club from 2010-2012, and left, but returned to performing there in September, 2014.

5. The main reason I signed to dance at the Club as an independent contractor is because I want control of my schedule.   I decide what days and times that I want to perform at the Club, and including whether I want to perform there at all.  I notify the Club of the days, and times I want to dance, and that's when they schedule me.

6. When I perform at Pure Pleasure, I rent the facilities for $15 a day - $10 of which goes to the DJ and $5 to the house.

7. I choose and pay for my costumes, shoes, and accessories, and any decide on my costume and appearance.   I also control my own performance and the music.

8. I decide what patrons I dance for while performing.

9. I am not required to perform any other functions at the Club; for example, serving, door person, bartending, etc.

10. The Club expects us to conform to the ABC laws with respect to costumes, being clothed when not onstage, in street clothes on the restaurant side, etc.  I am not required to follow any other Club rules about when, where, and how to perform.

11. I have never received any training from the Club.



EXHIBIT
L

12. I do not receive wage or salary payments from the Club.  When I perform at the Club, I receive payment from the patrons in the form of tips, and I retain 100% of those tips. When I perform a lap dance, I receive about sixty-percent (60%) of the revenue paid by the patron.  I choose to have the Club manager to hold my share of the fee until I am ready to leave, and she gives it to me then.

13. I am self-employed and responsible for paying all of my state or federal taxes on my income.

I affirm under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

| 7-24-15 | Amanda Coleman |
|---|---|
| Date | Amanda Coleman |

4829-2842-5765, v. 1

-2-



**CLUB:** *Pure Pleasu___*

## PERFORMER RELATIONSHIP SELECTION AGREEMENT

I, (PERFORMER'S LEGAL NAME) *Amanda Coleman* understand that I have the option to provide services and/or performances to *Pure Pleasure* (hereinafter, "The Club") as either a Licensee and Temporary Space Lessee or, if I choose to, as an employee. I acknowledge that I have reviewed the following and that I have elected to choose the option designated at the conclusion of this document. I further acknowledge that I have had an opportunity to consult with an attorney of my own choice prior to making a selection of being a Licensee and Temporary Space Lessee *or* an employee. **I further acknowledge that this Relationship Selection Agreement is not intended to provide legal or tax advice, and is merely a summary of general information that I am urged to research or evaluate on my own, with my own attorney. All descriptions of professional activities are for "example" purposes only, and not intended to describe any specific job or lease responsibilities relating to any specific performer.**

## OPTION OF BEING A LICENSSEE AND TEMPORARY SPACE LESSEE
### The following is an illustrative description of the characteristics of a
### Licensee and Temporary Space Lessee

• It is your decision and choice, and entirely under your control to choose when or if you perform and you make your own schedules for performing.
• It is your decision and choice, and entirely under your control to choose *your* costumes, hair styles, nail colors/styles, and accessories, and any aspect of your physical appearance as applicable with all local laws.
• It is your decision and choice, and entirely under your control to choose the music you wish to accompany your performance as available by location.
• It is your decision and choice, and entirely under your control to choreograph your own dance styles and routines.
• It is your decision and choice, and entirely under your control to choose any desired props for shows.
• It is your decision and choice, and entirely under your control to choose those patrons who you wish to dance for.
• It is your decision and choice, and entirely under your control to choose to perform at any Club in any town at any time as you desire.
• You are not required to fill in other positions as needed by the Club such as waitresses,

1

door persons, janitor, etc.
• You keep any gratuities you receive for your performances.
• It is your decision and choice, and entirely under your control to choose to take vacations or time off any time you wish.
• You keep dance fees minus rent.
• You keep your "conversation fees."
• You take breaks and lunch when you choose.
• You choose the contests you wish to enter, and keep all prize money.
• You do not have to attend any employee meetings.
• You are not required to meet dance quotas.
• You are not required to meet drink quotas.
• You are responsible for paying any and all state or federal taxes on your own income, and you are invited to keep track of any deductions to which you may be entitled to as a Licensee and Temporary Space Lessee. Examples of possible deductions are set forth below, but not offered as any type of tax advice:

## EXAMPLES OF *POSSIBLE* TAX DEDUCTIONS (THIS IS *NOT* TAX ADVICE!)

   -Costumes.
   -CD's/tapes, stereo equipment to practice by.
   -Airfare, automobile, hotel expenses for travel between Clubs Cosmetology services – hairstyling, nails, tanning, massages, child care deductions.
   -Medical bills for business related activities.
   -Insurance for business assets.
   -Breast implants and other cosmetic surgery for your profession.
   ***NOTICE**- Please ask you tax advisors for any specific advice on IRS regulations.

## OPTION OF BEING AN EMPLOYEE

### The following is an illustrative description of the characteristics of an Employee

• You will be paid the minimum wage provided by the law, will get reduced minimum wage for tip credit where allowed, and be paid like wait staff (Currently $2.13 per hour, or as amended by Congress, or as defined by applicable state law).
• Per ABC no employee is allowed to consume alcohol while working.
• You will be paid for overtime (1 ½ times the normal hourly rate) for hours worked in excess of forty (40) hours per week.
The Club will decide whether you are allowed to work overtime.
• You will be given an unpaid one-half (1/2) hour meal break, if you work a continuous period of 8 hours.
• You will be given paid rest breaks, during times authorized by Club management, at a rate of 15 minutes for each 4 hours worked, or major fraction thereof.
• You will be required to share tips with other Club employees, where the law allows.





• You will be required to turn over to the Club all Dance Performance Fees which are charged to the customers for couch, table, VIP and shower dances (including tips or gratuities which you receive in excess of the posted prices).

• The Club will have controls over you which they regularly exert over all of the employees.

• The Club may require you to sell drink quotas, however you shall not solicit the sale of any beverages.

• You may be required to do general cleaning in areas of the Club during *your* shift and before leaving.

• You may be required to fill in for any other employee who does not show up for work no matter what his or her job responsibilities may be, i.e. waitress, door person, janitorial, etc.

• The Club may terminate your employment at any time without cause, and without any prior notice or warning.

• The Club can require you to work a schedule set for you by the Club for a minimum of 40 hours per week.

• The Club can require you to work overtime as needed by the Club.

• The Club can require you to wear costumes, make-up and hair styles selected by the Club (note: If the Club decided to require you wear a uniform or other *accessories distinctive as to style, color, or material, any such uniforms will be* furnished to you - without cost - by the Club, and if such uniforms or accessories require a special cleaning process, and cannot be easily laundered by you, the Club will clean such uniform, as necessary, for you without cost.

• The Club can require you to produce a required quota of dances or lose your job.

• The Club can require you to undergo training, including choreography, under the direction of the Club.

• The Club can require you to dance for customers selected by the Club.

• The Club can require you to dance to music chosen by the Club.

• The Club can require you to dance in a manner directed by the Club.

• The Club can require you to attend employee meetings along with all other Club employees.

• The Club can require you to perform only at this Club or at Clubs specifically approved by the management of this Club.

• The Club can require you to work one full year before taking a vacation.

• The Club can fire you and bring criminal charges against you for overcharging patrons.

• The Club can require you to enter contests at any Club as management so desires.

• You may lose your ability to deduct from your taxes, your normal business expenses such as:

Costumes
CD's/tapes, stereo equipment to practice by
Airfare, automobile, hotel expenses for travel between Clubs Cosmetology services - hairstyling, nails, tanning,

Childcare deduction

Medical bills for business related activities

Transportation expenses, mileage from your home

Evening gowns that you work in

*Ask your tax advisors for IRS regulations,*

*This is only an example of possible deductions, NOT TAX ADVICE!*

Upon becoming an employee, you will be required by law to:

• Keep a daily record showing for each work day, the amount of cash and credit card tips received directly by you either from customers or Club employees.

• Report to the Club, at least once a month before the 10th day of each month all "tips" and gratuities received by you from customers or from other employees.

• Punch a time-clock, if applicable, in and out like other employees.

• Provide the Club all required personal information for tax purposes.

Upon your decision to become an employee of the Club, management will be required by law to:

• Issue to you, and to the IRS, W-2, W-3 (and 1099-Misc., if required) statements of earnings.

• Increase your reported income to the IRS for tax purposes by an amount equal to 8% of the fees charged for couch, table and VIP dances, as tips, if the tips which you report to the Club as having been received by you are less than 8% of those dance prices (this is the same requirement for all regularly "tipped" employees, including waitresses).

• Report to the IRS all of your earnings, including tip income.

• *Deduct from your pay all legally required or allowed amounts, including* sums for federal taxes, social security, unemployment compensation, and any other applicable taxes.

I ELECT TO ESTABLISH THE FOLLOWING RELATIONSHIP WITH THE CLUB:

*LICENSEE AND TEMPORARY SPACE LESSEE: _X_ YES _____ NO

*EMPLOYEE: _____ YES _✓_ NO

**AGREED TO AND ACKNOWLEDGED BY:**

Amanda Coleman                          9-9-14

Legal Name of "Performer"               Date

_____

4

Print Name

_____
Witness to Performer's Signature

9-9-22 /
Date

Tiffany N. Williams
Print Name

_____
Authorized Representative of the Club

9-9-14
Date

5



CLUB: Pure Pleasure

## PERFORMER INFORMATION FORM

PLEASE MAKE SURE THAT ALL INFORMATION IS PRINTED IN A LEGIBLE AND
CLEAR MANNER

LAST NAME: Coleman     FIRST NAME: Amanda

<span style="color:red">REDACTED</span>

DATE OF BIRTH: _

STAGE NAME: IVV

<span style="color:red">REDACTED</span>

ADDRESS: _

| STREET | CITY | STATE | ZIP CODE |

<span style="color:red">REDACTED</span>

PRIMARY PHONE: _____     ADDITIONAL PHONE: N/A

DRIVERS LICENSE: _____ (LIST ISSUING STATE AND NUMBER,

ATTACH A COPY)

SECONDARY FORM OF IDENTIFICATION: N/A

<span style="color:red">REDACTED</span>

SOCIAL SECURITY NUMBER: _

<span style="color:red">REDACTED</span>

EMERGENCY CONTACT INFORMATION:

DATE THIS FORM COMPLETED: 9-9-14

PERFORMER'S ACKNOWLEDGMENT OF RECEIPT OF PERFORMER RELATIONSHIP
SELECTION AGREEMENT

Amanda Coleman

Performer's Signature

FORM VERIFIED AND APPROVED

BY: Jornel Stein



**CLUB:** Pure Pleasure

## PERFORMER LICENSE AND TEMPORARY SPACE LEASE AGREEMENT

### NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS AGREEMENT- READ IT!

LICENSE AND TEMPORARY SPACE LEASE COMMENCEMENT DATE: 9-9-14

PREMISES ADDRESS: 68 Labrock Concourse (the "Premises)

PERFORMER LEGAL NAME: Amanda Woman

**PERFORMER ACKNOWLEDGES THAT PERFORMER HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED TERMS AND CONDITIONS IN ITS ENTIRETY, THAT PERFORMER HAS BEEN GIVEN AN OPPORTUNITY TO ASK THE CLUB ANY QUESTIONS OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT PERFORMER HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HIS OR HER CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. PERFORMER ACKNOWLEDGES THAT PERFORMER UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.**

**THIS AGREEMENT REPLACES AND SUPERSEDES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE "MEETING OF THE MINDS" HAS BEEN SINCE THE PARTIES ESTABLISHED THEIR RELATIONSHIP, THE TERMS AND CONDITIONS HEREIN ARE DEEMED EFFECTIVE FROM THE DATE OF ANY PRIOR AGREEMENT OR RELATIONSHIP BETWEEN THE PARTIES, SHOULD ONE EXIST.**

This Agreement incorporates our terms of AGREEMENT set out on the attached Terms and Conditions, which you confirm you have read and understood. We both agree to comply with the Terms and Conditions:

## LICENSE AND TEMPORARY SPACE LEASE TERMS AND CONDITIONS

### 1. INCORPORATION OF PERFORMER RELATIONSHIP SELECTION FORM.

The Club and the Performer hereby acknowledge and agree that the Performer Relationship Selection Form is incorporated by reference herein, as if fully set forth, and Performer further acknowledges that he/she has reviewed the Performer Relationship Selection Form, and, after

acknowledging that he/she has had an opportunity to consult with an attorney of his/her own choice prior to making a selection of being a Licensee and Temporary Space Lessee *or* an employee, has elected to perform as a Licensee and Temporary Space Lessee.

## 2. GRANT OF LICENSE.

The Club hereby grants to Performer a temporary, revocable license (the "License") and non-exclusive right to use and occupy the Premises (the "Temporary Space Lease") commencing on License and Temporary Space Use Lease Commencement Date and continuing  until the Termination Date, defined below, subject to the terms and conditions contained herein.

## 3. PERMITTED USES.

The Club will give access to its premises during normal operating hours for Performer's performances. This License shall be limited to Performer's use and occupancy of the Club as a Performer and Performer shall be entitled to perform entertainment services at the Club. Performer shall not use or occupy the Club or act or fail to act in any way which would constitute an event of default by Performer under this Agreement.

## 4. DURATION OF LICENSE AND TEMPORARY SPACE LEASE; TERMINATION

## OF LICENSE AND TEMPORARY SPACE LEASE.

This Agreement shall be for the period commencing on the License and Temporary Space Use Lease Commencement Date and shall terminate on the day preceding the first anniversary of the License and Temporary Space Use Lease Commencement Date. The License and Temporary Space Use Lease shall be *automatically extended* for successive periods equal to the current term. Notwithstanding the foregoing, either the Club or Performer may terminate this Agreement by giving the other party thirty (30) days' written notice of intent to terminate.  In addition, the Club may terminate this Agreement without advanced notice in the event of any material breach by Performer, violation of any federal, state or local law or for any unprofessional conduct by Performer while on premises of the Club.

## 5. BASE LICENSE FEE.

In consideration of The Club's granting to Performer the right to use and occupy the Premises up through and including the License and Temporary Space Lease Termination Date, Performer hereby agrees to pay to The Club a daily license fee as set forth on **Exhibit A** attached hereto and made a part hereof (the "Base License Fee"). The Base License Fee shall be due and payable each day that Performer performs at the Club.

## 6. COMPENSATION.

Performer shall be entitled to retain all fees and gratuities received by customers of the Club for performances of Performer's services, subject to administrative fees charged by the Club in

exchange for processing of credit cards, redemption of Club Scrip (i.e. Dance Dollars, etc.) However, the Club shall establish minimum fees (the "Performance Fees") for entertainers' performances to be paid by customers based on industry custom and in consultation with Performers. The Club represents that the Performance Fees shall be competitive with fees charged at competitor establishments. Performer agrees not to charge a customer less than the Performance Fees for any performance unless the Performer first notifies the Club in writing of any charges to her customers of a lower amount. However, nothing shall prevent Performer from receiving tips or other gratuities in excess of the Performance Fees. **The Performer specifically acknowledges that the Performance Fees attributable to personal dances (i.e. "lap dances") or performances in private or semi-private rooms are a non-discretionary mandatory service charge to the customers and are not tips or gratuities to the Performer.**

## 7. <u>HOURS.</u>

The Club is to provide to Performer the non-exclusive right, in common with other entertainers, to perform at the Club, during the Club's normal business hours; Performer agrees to negotiate with the Entertainment Director, Scheduling Director, or assignee, to establish a weekly reserved performance schedule that fits within Performer's weekly artistic pursuits. The reserved performance schedule is only valid for one week and shall be renegotiated weekly. Performer agrees that, if Performer misses any portion of the reserved performance schedule, Performer may be subject to appropriate sanctions and/or possible cancellation of the reserved performance schedule. Such sanctions shall be in the form of liquidated damages, set forth in Exhibit A, hereto. Performer shall have the right to perform at the Club during the hours of Performer's Schedule and shall have the right to perform at the Club at all times only subject to availability.

## 8. <u>SERVICES.</u>

In addition to use of the Club premises, The Club shall provide the following services at the Club, at The Club's expense and/or with Club permission:

   a) Music (including ASCAP/BMI/SESAC fees);
   b) Dressing Room Facilities;
   c) Lockers;
   d) Wait Staff;
   e) Beverage Service; and
   f) Advertisement of the Club (any advertisement specific to the Performer shall be at Performer's sole cost and expense and The Club shall have no obligation to advertise for the Performer).
   g) "House Mom" (NOT compensated independently by the Club, however the performer may provide voluntary gratuities to the House Mom, if desired)

Performer agrees that the License Fee does not include fees for the following services: hair and make-up artists and any other ancillary services which shall be contracted for and paid directly by Performer, at Performer's sole cost and expense.

## 9. <u>RELATIONSHIP.</u>

_TNW_

2

The Club and Performer each acknowledge and agree that the relationship of the parties hereto is that of The Club as "Licensor" and "Lessor" and Performer is a "Licensee" and "Temporary Space Lessee" and *is not* an employee/employer relationship. Nothing in this Agreement shall be construed so as to create an employee/employer relationship between the parties hereto.  Performer shall be solely responsible for obtaining and maintaining, at Performer's sole cost and expense, all necessary business licenses and permits and insurance including but not limited to, health, disability and workers compensation and for paying all federal, state and local taxes and contributions imposed upon any income earned by Performer at the Club.

The Club and Performer acknowledge and represent that if the relationship between them was that of employer and employee, the Club would be required to collect, and would retain, <u>all</u> Performance Fees paid by customers to Performer.  Performer acknowledges and agrees that if the relationship were one of employer/employee, all Performance Fees would be the property of the Club. THE PARTIES ACKNOWLEDGE AND REPRESENT THAT PERFORMER'S RIGHT TO OBTAIN AND KEEP PERFORMANCE FEES PURSUANT TO THIS LICENSE IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF THE CLUB BEING A LICENSOR AND TEMPORARY SPACE LESSOR AND PERFORMER BEING A LICENSEE AND TEMPORARY SPACE LESSEE.

Performer is a skilled entertainer and the Club is not responsible for providing training or instruction on performances.  Since Performer understands that for all purposes under this Agreement, Performer will operate as an independent Performer, Performer retains full independence in exercising judgment as to the time and manner in performing at the Club. For example, Performer shall have the sole and exclusive right to choose the days or evenings to appear and perform at the Club, and individual choice over his/her costumes, props, or any other equipment used during a performance.  Performer is solely responsible for the development of any performances, number of hours spent performing, and the final control over any aspect of the presentation of any performance.

In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Performer is not unjustly enriched, the Club and Performer agree that if upon any ruling or decision of an arbitrator, court or other tribunal with jurisdiction over the matter that the relationship is one of employer/employee, Performer shall surrender, reimburse and pay to the Club, all Performance Fees  received by Performer at any time she performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Performer under the terms of this License and Temporary Space Lease - and shall immediately provide a full accounting to the Club of all tip income which he/she received during that time. This potential set-off shall be agreed to regardless of the Club not administering the applicable dance fees as part of the Club's gross receipts.



Any Performance Fees that Performer fails to repay to the Club are deemed service charges to the customer and, as such, the Club shall be entitled to offset any wage obligations by any amount not returned by the Performer.

By this Agreement, Performer shall be compensated for providing performances that would otherwise be Performance Fees due to the Club by receiving these fees exclusively and directly paid by patrons of the Club. Furthermore, Performer acknowledges that any and all fees received from patrons must be reported in full to the Internal Revenue Service, and that the payment of taxes and other required contributions are the sole responsibility of Performer, and that the Club has no control over the amount of income Performer earns nor any means to monitor or determine same.

Performer has the right to provide similar services to other nightclubs or companies while subject to the terms of this Agreement.

### 10. RELEASE FROM LIABILITY.

Performer agrees that The Club shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except The Club's willful misconduct. Performer shall not hold The Club in any way responsible or liable therefore and will indemnify and hold The Club harmless from and against any and all claims, liabilities, penalties, damages, judgments and, expenses (including, without limitation, reasonable attorneys fees and disbursements) arising from injury to person or property of any nature arising out of Performer's use or occupancy of the Premises and also for any other matter arising out of Performer's use or occupancy of the Premises including damage or injury caused by Performer.

Performer agrees to abide by all of the local ordinances of the City or County and the laws of the State in which the Club is located regulating topless and/or exotic dancing and/or adult entertainment performances.

Performer agrees that he/she will not violate any law or statute regarding prostitution, obscenity, harassment or unlawful performances and will hold the Club harmless for attorney fees, fines, and costs arising out of Performer's performances or services rendered at the Club's premises or business location which result from Performer's non-compliance with this Agreement.

### 11. NO ASSIGNMENT.

No assignment of this License and Temporary Space Lease shall be made by Performer.

### 12. DEFAULT.

In the event Performer shall be in default of any obligation to pay money under this License and Temporary Space Lease or in the event Performer shall be in default of any non-monetary provision of this License and Temporary Space Lease (including but not limited to violation of any Federal, state or local laws or regulations), this License and Temporary Space Lease shall

immediately terminate, and The Club shall have the right to the extent permitted by law, to (i) immediately withdraw the permission hereby granted to Performer to use the Premises; and (ii) remove all persons and property therefrom, without being deemed to have committed any manner of trespass. Such remedies shall be in addition to any other rights or remedies the Club may have hereunder or at law or equity.

### 13. CONFIDENTIALITY.

The Club and Performer acknowledge that each may come into contact with information in all forms regarding the other's business, clients and clients' businesses. All such information shall be deemed confidential information and shall not be used or communicated by the other at any time for any reason whatsoever.

### 14. NOTICES.

Any notices required or permitted to be given to either party under this License shall be given to the respective parties at the address written on the first page of this Agreement by hand, by Certified U.S. Mail, return receipt requested, or overnight courier (for next business day delivery) return receipt requested. Such notices shall be deemed given upon: a) delivery, in the case of hand delivery; b) one business day after mailing, in the case of overnight courier, and c) three business days after mailing, in the case of mailing.

### 15. LEGAL ACTION.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE CLUB IS LOCATED WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

### 16. ARBITRATION.

**The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, and will be governed by the following:**

1. **Dispute Resolution/Arbitration Provision:**

   a. If a dispute arises between the Club and Performer (over any aspect of their relationship), the Parties agree that the best way to resolve such dispute is informally. For that reason, if either Party has such a dispute with the other, the Party will bring it to the other Party's attention and attempt to work things out informally. But if not resolved informally, the Parties agree and neither will object to submit the dispute to final and binding arbitration as explained in this Section 16 rather than filing a lawsuit in court.

   b. Both Parties are equally bound to arbitrate disputes, held to the same standard, and are given comparable rights under this Agreement. The Parties share the right to select the arbitrator and are allowed access to an attorney throughout the arbitration process.



c. **THIS PROVISION ELIMINATES THE RIGHT TO A TRIAL BY JUDGE OR JURY AND TO BRING OR JOIN IN CLASS ACTION PROCEEDINGS.**

d. The Parties agree to submit any dispute (whether the dispute arose prior to or after execution of this Agreement) they are unable to resolve informally to final and binding arbitration as follows:

   i. **How this Arbitration Provision Applies**
This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. Its purpose is to ensure that an arbitrator, **not** a court, will decide **ALL** federal, state, statutory, and common law claims between the Parties, including, but not limited to all claims—legal or equitable, whether based in statute, tort, contract, equity, or breach of trust—that arise out of, in connection with, or relating to this Agreement (including formation, execution, enforcement, interpretation, or modification), Performer's classification as an independent contractor, and the arbitrability of any such claim, regardless of when it may have arisen, and regardless of whether a lawsuit has been filed seeking a collective or class action, all of which must be submitted for the arbitrator to decide in the first instance.

   ii. **Limitations On How This Agreement Applies**
This Agreement will not apply if an arbitrator determines (1) that the applicable law prohibits the arbitrator from deciding a particular matter or (2) that the Agreement restricts either Party from exercising a right that cannot be expressly waived by an agreement such as the right to pursue a claim of a unfair labor practice with the NLRB.

   iii. **Selecting the Arbitrator**
The Parties will select an Arbitrator by mutual agreement as follows:
- The Arbitrator must be an attorney or a former judicial officer;
- The Arbitrator must be licensed to practice or to preside where the arbitration will be conducted;
- The Parties may also mutually agree to use JAMS or the American Arbitration Association (or another organization) to resolve any claim.  Claims will be resolved by the selected organization's rules in effect when the claim is filed, except where those rules conflict with this Agreement;
- If the Parties are unable to select an arbitrator by mutual agreement, either may apply to a court of competent jurisdiction where the arbitration will take place for the appointment of a neutral arbitrator. The court will appoint an arbitrator who will act under this Agreement with the same effect as if the Parties had mutually agreed upon the arbitrator's selection. The arbitration will take place no more than 25 miles from where the Performer last performed at the Club, unless the Parties agree otherwise.

   iv. **Starting The Arbitration**
The same statutes of limitation that would apply in court apply to claims in arbitration. The Party initiating the claim must deliver a written demand for

arbitration to the other Party by hand or U.S. Mail within the applicable statute of limitations period. The demand must include the claimant's name, address, telephone number, an email address (if available), an identification of the Parties, and a brief statement describing the nature of the claim(s) and the remedy the Party is seeking. Any arbitration demand made to the Club must be mailed to: 68 LaBrook Concourse, Richmond VA 23005. The arbitrator will resolve all disputes regarding timeliness or the propriety of the arbitration demand.

**v.   How Arbitration Proceedings Are Conducted**
In arbitration, the Parties will have the right to be represented by an attorney, to conduct civil discovery, to file dispositive motions, to have the arbitrator issue subpoenas, and to present witnesses and evidence as needed in support of any claim(s) or defense(s), and the Arbitrator will resolve any disputes in this regard.

**vi.   Class Action Waiver**
The arbitration is between the Club and Performer alone. For this reason, the Parties agree to bring claims *only* on an individual basis, **not** as a class action, collective action, or in any other representative capacity, such as a "private attorney general", etc. What this means as a practical matter is that each Party agrees that it will **not**:

1.   File a claim seeking to proceed as a class action, collective action, or in any representative capacity or proceeding (e.g., private attorney general, etc.);

2.   Attempt to consolidate claims involving separate claimants, unless the Club agrees in a writing signed by its Chief Executive Officer;

3.   Join, be part of, participate, or be represented in any class or representative action brought by someone else; or

4.   Pursue any award or remedy for someone who is not a named Party to the arbitration.

Furthermore, each party agrees that they will take all necessary steps to Opt-out or otherwise remove themselves as a participant in any class action filed under either state or federal law.

**vii.   Paying For The Arbitration**
Each Party will pay its own attorney fees unless the Arbitrator awards attorney fees to the prevailing party under the applicable law. The Club will pay the Arbitrator's and arbitration fees where the law requires. If applicable law does not require the Club to pay the arbitrator's and/or arbitration fees, the fees will be apportioned between the Parties in accordance with applicable law, and the Arbitrator will resolve any disputes in that regard.

**viii.   The Arbitration Hearing And Award**
The Parties will arbitrate their dispute before the Arbitrator who will confer with the Parties regarding the conduct of the hearing and resolve any disputes the Parties may

have in that regard. Within 30 days of the close of the arbitration hearing, any Party has the right to prepare a brief, serve it on the other Party, and file it with the Arbitrator. For any claim submitted to the Arbitrator, the Arbitrator may award any remedy the Party would otherwise be entitled to as an individual under applicable law. This Agreement will *not* cause any remedy that would otherwise be available to an individual in a court of law to be forfeited. The Arbitrator will issue a decision in writing stating the essential findings of fact and conclusions of law. Except where an Arbitrator determines that the law requires it, neither a Party nor an Arbitrator may disclose the existence, content, or results of the arbitration without the written consent of all Parties. Any court of competent jurisdiction will have the authority to enter a judgment based on the Arbitrators award.

## 2.  Enforcement of This Agreement

If any part of this Agreement is found to be invalid, illegal or otherwise unenforceable, the Parties will first be given an opportunity to refashion the offending provision to best effectuate (1) the intent of the original provision to the extent permissible under the law and (2) the private, out-of-court resolution of disputes. If the Parties are unable to agree upon an amended provision that the arbitrator or court finds enforceable, the arbitrator may apply the offending provision to the extent permissible under the law or select (from among the Parties' proposed modifications) the clause that best effectuates (1) the intent of the original provision and (2) the private, out-of-court resolution of disputes. If none of the Parties' proposed modifications would render the offending provision enforceable under the law, the clause will be severed and the remainder of the Agreement will be enforced.

## 3.  Scope of Arbitration and Arbitrability Reserved to the Arbitrator

This provision's purpose is to ensure that an arbitrator—*not* a court—will decide ALL federal, state, statutory, and common law claims between the Parties and to ensure that the class action waiver provision will apply to all such claims regardless of whether there are any pending collective or class actions pending at the time the agreement is entered. The Parties expressly agree that the arbitrator will decide all issues in the first instance, including, but not limited to all gateway questions of arbitrability concerning: substantive arbitrability; the scope of this arbitration provision; the provision's applicability to a particular dispute; procedural arbitrability; whether the Parties have complied with this arbitration provision; the validity and enforceability of the Agreement as a whole; the validity and enforceability of this arbitration provision; and whether the arbitration clause is substantively or procedurally unconscionable. Neither of the Parties will institute a civil action concerning a dispute between the Parties, and will instead submit all disputes to arbitration. If a Party institutes a civil action despite this provision, the Parties agree the court will immediately refer the matter to the arbitrator in the first instance for determination. Should Performer attempt to disavow the nature of the Parties' relationship or its classification as an Independent Performer, Licensee and Temporary Space Lessee, and not an "employee", such challenges will be heard exclusively by the arbitrator, not a court — moreover, the class action waiver provision will continue to apply to all such claims, regardless of the arbitrator's determination. If arbitrator reclassifies Performer as an employee, this Agreement will remain in full effect (including the class action waiver), and the arbitrator will proceed to

adjudicate the claimant's remaining employment-related allegations, such as those arising, e.g., under Title VII, the FLSA, ADEA, or any state statutes covering similar subjects.

## 17. VOLUNTARY AGREEMENT.

Performer confirms she is entering into this Agreement freely without threat, duress, or coercion of any kind.

## 18. MISCELLANEOUS.

This Agreement constitutes the entire understanding of the parties. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement. No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement. If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law. The Club's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement. This Agreement represents the entire agreement of the parties with respect to the subject matter thereof, and may not be modified or amended except in accordance by a writing signed by each of the parties hereto. All Sections 9 through 17 of this Agreement shall survive the termination of this Agreement.

## AGREED TO AND ACKNOWLEDGED BY:

_Amanda Cohen_
Signature-Legal Name of "Performer" (initial each page)

9-9-14
Date

_Amanda Cohen_
Print Name

_(signature)_
Witness to Performer's Signature

9-9-14
Date

_Tiffany N. Williams_
Print Name

_____          9-9-14
Authorized Representative of the Club     Date

Tonne Saturday
Print Name

## EXHIBIT A

### PERFORMER LEASE AND LICENSE FEES

CLUB: _Pure Pleasure_

0-1 Showtimes-$60

2    Showtimes-$30

3    Showtimes-$20

4    or more Showtimes-$15

Lease and License Fees are due at the beginning of any showtime.

Any Entertainer who misses a showtime is still held liable for the Lease and License Fee for that showtime payable at the beginning of the next reserved showtime.

Once the showtime reservations are made and finalized, any additional showtimes reserved will be charged at the rate of the initial reservation amount.

Additional charges may apply for weekend night reservations as listed below:

Friday _10$_   MGR INT _TNW_   Performer INT _APC_

Saturday _10$_   MGR INT _TNW_   Performer INT _APC_

_Amanda Colem_                              _9-9-14_
Legal Name of "Performer"                        Date

_Amanda Coleman_
Print Name

_Tiffany William_                              _9-9-14_
Witness to Performer's Signature                 Date

_Tiffany Ni Williams_
Print Name

_Tom Olsen_                              _9-9-14_
Authorized Representative of the Club             Date

CLUB: Pure Pleasure

## PERFORMER INFORMATION FORM

PLEASE MAKE SURE THAT ALL INFORMATION IS PRINTED IN A LEGIBLE AND CLEAR MANNER

LAST NAME: Coleman          FIRST NAME: Amanda

DATE OF BIRTH: REDACTED

STAGE NAME: IVY REDACTED

ADDRESS: REDACTED
          STREET          CITY          STATE          ZIP CODE

PRIMARY PHONE: REDACTED          ADDITIONAL PHONE: N/A

DRIVERS LICENSE: _____ (LIST ISSUING STATE AND NUMBER,

ATTACH A COPY)

SECONDARY FORM OF IDENTIFICATION: N/A

SOCIAL SECURITY NUMBER: REDACTED

EMERGENCY CONTACT INFORMATION: REDACTED

DATE THIS FORM COMPLETED: 9-9-14

PERFORMER'S ACKNOWLEDGMENT OF RECEIPT OF PERFORMER RELATIONSHIP SELECTION AGREEMENT

*Amanda Coleman*
Performer's Signature

FORM VERIFIED AND APPROVED
BY: *James Stru*