**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| HANNAH CRAMER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARKESIA, INC. d/b/a CLUB ROUGE, et al., <br><br> Defendants. | **Case No. 3:18cv00039** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OPT-IN PLAINTIFF HANNAH CRAMER'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION**

Defendants have, since the outset of this litigation, engaged in a whack-a-mole strategy of repetitive, duplicative, and successive motion filing. To date, Defendants have cumulatively filed 23 motions to dismiss Plaintiffs' complaint, and 13 motions to strike Plaintiffs' allegations. (See Dkt. Nos. 16, 21, 26, 31, 36, 43, 58, 60, 64, 66, 68, 103.) Knowing that Federal Rule of Civil Procedure 12(g)(2) prohibits Defendants from seeking dismissal of Plaintiffs' claims through another motion to dismiss, Defendants disingenuously attempt to disguise the instant motion as one compelling arbitration. Defendants' motion must be denied as it is ultimately an application contesting venue under Rule 12(b)(3) – a defense that Defendants failed to assert in prior motions and have already waived under Rule 12(h)(1)(A). *See Hayes v. Delbert Servs. Corp.*, No. 3:14–cv–258, 2015 U.S. Dist. LEXIS 6715, at *3 n.1 (E.D. Va. Jan. 21, 2015), *rev'd on other grounds*, 811 F.3d 666 (4th Cir. 2016). Nevertheless, even if this Court finds that Defendants' motion is procedurally proper, and that the defense of arbitration has not been waived, it should deny Defendants' motion and refrain from enforcing the arbitration agreements as they are inherently misleading. At the very least, this Court should refrain from ruling on the enforceability of the arbitration agreements until the completion of discovery and a merits determination as to their applicability and enforceability.

1

**I.  Defendants Cannot Seek Dismissal Because They Previously Moved to Dismiss**

Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The rule acts to require "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense" at the same time--rather than "interposing these defenses and objections in piecemeal fashion." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5C FED. PRAC. & PROC. § 1384 (3d ed. 2014). "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." *Id*. § 1388. *See also* Fed. R. Civ. P. 12 Advisory Committee's Note to 1996 Amendment ("[12(g)] has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein.").

In the instant matter, Defendants are engaging in the sharp practice that Rule 12(g) was enacted to prevent. Specifically, on February 12, 2018 and February 13, 2018, Defendants filed multiple motions to dismiss and strike Plaintiffs' Complaint pursuant to Rules 12(b)(1), 12(b)(6) and 12(f). At that time, Defendants argued that Plaintiffs failed to plead sufficient facts to support their claims, that Plaintiffs' collective action claims should be stricken, and that Plaintiffs lacked standing to sue, thereby depriving this Court of subject matter jurisdiction. (*See* Dkt. Nos. 14, 16, 19, 21, 24, 26, 29, 31, 34, 36, 41, 43.) In an effort to cure any purported deficiencies, Plaintiffs' filed a First Amended Complaint ("FAC") on February 26, 2018, and this Court denied Defendants' motions as moot. (*See* Dkt. Nos. 51 and 55.) Undeterred, on March 12, 2018, Defendants moved to dismiss and strike Plaintiffs' FAC pursuant to Rules 12(b)(1), 12(b)(6) and 12(f) presenting essentially the same arguments they asserted against the original complaint. (*See*

Dkt. Nos. 58–82.) Although these motions are currently pending before this Court, on April 13, 2018, Defendants filed additional motions to dismiss and/or compel arbitration pursuant to Rules 7 and 12(b), and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (*See* Dkt. Nos. 137–156.)  In the instant motions, Defendants again argue that this Court should dismiss Plaintiffs' FAC "because it lacks subject matter jurisdiction over this matter," and that Plaintiffs should not be allowed to proceed collectively with their claims. (*See* Defendants' Memorandum of Law submitted in support of their Motion to Dismiss the FAC or, in the Alternative, To Compel Arbitration and Stay Proceedings Pending Arbitration ("Def. Memo"), Dkt. No. 148 at 1.) Alternatively, Defendants assert that this Court should enforce arbitration agreements purportedly entered into between the parties.  *Id.*

Because Defendants have already filed multiple motions to dismiss Plaintiffs' claims, they are prohibited from filing yet another motion to dismiss. *See* Fed. R. Civ. P. 12(g)(2). While Defendants attempt to disguise their motion as one seeking to compel arbitration, this defense has been "available" to Defendants since they first moved to dismiss Plaintiffs' claims in February, and was still available at the time they filed their March 12 motions seeking dismissal of Plaintiffs' FAC. In both sets of motions, Defendants never once raised any argument that Plaintiffs' claims should be dismissed due to the existence of arbitration agreements, or any potential defense that arbitration should be compelled as to any Plaintiff. Accordingly, Defendants have waived that defense and their motion must be denied.

Numerous courts have applied Rule 12(g)(2) to deny untimely filed, successive motions to dismiss. *See, e.g.*, *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1078 (E.D. Pa. 2017) (*quoting Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320-21 (3d Cir. 2015) ("A successive motion to dismiss filed under Rule 12(b)(6) for failure to state a claim is 'plainly neither a Rule

7(a) pleading nor a motion raised at trial'; nor is it a Rule 12(c) motion."); *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959 (N.D. Cal. 2017) (defense could previously have been asserted so motion to dismiss not considered); *Agape Family Worship Ctr., Inc. v. Gridiron*, 2016 U.S. Dist. LEXIS 68209, at *4-*5 (C.D. Cal. May 24, 2016) ("a defendant is foreclosed from raising in a Rule 12(b)(6) motion arguments it should have asserted in a prior Rule 12(b)(6) motion."); *Hummel v. Tamko Bldg. Products, Inc*., 2016 WL 7340301, at *12-13 (M.D. Fla. 2016) ("Allowing Defendant to raise new grounds for dismissal would not only be in direct contravention [to] Rule 12(g)(2), it would undermine the Rule's intended purpose"; "Therefore, [the] Court will not construe Defendant's motion to dismiss as a motion for judgment on the pleadings simply so that Defendant can circumvent Rule 12(g)(2) and advance a new argument that was available when it filed its initial motion to dismiss."); *Northstar Fin. Advisors v. Schwab Invest.*, 135 F. Supp. 3d 1059, 1070 (N.D. Cal. 2015) (defendant "foreclosed" by Rule 12(g)(2)); *Cooney v. Barry Sch. of Law*, 2014 U.S. Dist. LEXIS 192245, at *3-4 (M.D. Fla. Oct. 30, 2014) (citing Fed. R. Civ. P. Rule 12(g)(2); "Defendant failed to raise its Rule 12(b)(6) arguments in its initial motion to dismiss filed in the Eastern District of New York and therefore it is barred from doing so now.); *GCL, LLC v. Schwab*, 2012 U.S. Dist. LEXIS 135534, at *9 (E.D. Pa. Sept. 21, 2012) ("[A]ll of Defendant's arguments were available to him at the time he filed his initial motion to dismiss. Accordingly, I will not address the arguments that were previously available to the Defendant but were not raised."); *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 824 (S.D. Ohio 2012) (Rule 12(g)(2) precluded a subsequent Rule 12(b)(6) motion to dismiss); *Garrett v. Cassity*,  2011 U.S. Dist. LEXIS 82884, at *16 n.4 (E.D. Mo. July 28, 2011) ("Wulf Defendants did state in their first motion that they were reserving the right to file additional Rule 12 motions depending on how that motion was resolved, but the language of Rule 12(g)(2) is mandatory and

does not provide for such a reservation of rights."); *Chen v. Cayman Arts, Inc.*, 2011 U.S. Dist. LEXIS 28835, at \*6 (S.D. Fla. Mar. 21, 2011) ("Contrary to the Third--Party Defendants' contentions, the Rule 12(h)(2) exception to Rule 12(g) does not permit them to file their Second Motion to Dismiss.... The Rule 12 drafters did not intend to allow a party to bring unlimited motions to dismiss based on different defenses."); *Fed. Agr. Mortgage Corp. v. It's A Jungle Out there, Inc.*, No. 03-cv-3721, 2005 WL 3325051, at \*5 (N.D. Cal. Dec. 7, 2005) (finding that when a complaint is amended after a 12(b) motion is filed, the defendant is precluded from filing a second asserting defenses that could have been asserted in the first motion).

Likewise, the Fourth Circuit has emphasized that "since the Federal Rules were first adopted in 1938, they have barred a defendant from interposing successive motions raising certain 12(b) defenses … if the defense was previously available to the defendant." *Patterson v. Whitlock*, 392 Fed. App'x 185, 192 (4th Cir. 2010). *See also Flame S.A. v. Industrial Carriers, Inc.*, 2014 U.S. Dist. LEXIS 97496, at \*10-11 (E.D. Va. July 17, 2014) (denying motion to dismiss pursuant to 12(g)); *Elderberry of Weber City, LLC v. Living Ctrs.*, 2013 U.S. Dist. LEXIS 38705, at \*8-9 (W.D. Va. Mar. 20, 2013) (rejecting second motion to dismiss, characterizing the filing as "result[ing] in precisely the type of delay the Rule 12(g) consolidation rule is intended to prevent ....").

Here, Defendants are impermissibly attempting a second (indeed, third) bite at the apple, by making an argument that they clearly could have presented in their first set of motions to dismiss the original complaint, much less in their second set of motions responding to Plaintiffs' FAC. Now, for the first time, Defendants assert that the parties agreed to arbitrate their claims, and that arbitration should be compelled. Defendants certainly had access to the arbitration agreements and knew that the arbitration defense was available when they filed all 23 versions of their previous

motions to dismiss. Tellingly Defendants offer no explanation for their substantial delay in raising arbitration at this stage of the litigation, nor can they claim this defense was not previously available to them.

A defense is deemed "unavailable" under Rule 12(g)(2) only when "its legal basis did not exist at the time of the answer or pre-answer motion, so that it was for all practical purposes impossible for the defendants to interpose their . . . defense." *Noveshen v. Bridgewater Assocs., LP*, 2015 WL 11170928, at *3 (S.D. Fla. July 20, 2015) (*quoting Gilmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 9, 13 (D.D.C. 2014)) (internal quotations omitted). *See also Chatman–Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988). Courts typically find "unavailability" when there is an unexpected, intervening change in law – not when a defendant does not do its homework. *See, e.g., Strauss v. Credit Lyonnais, S.A*., 175 F. Supp. 3d 3, 14 (E.D.N.Y. 2016) (change in controlling law); *Engel v. CBS, Inc*., 886 F. Supp. 728, 730 (C.D. Cal. 1995) (amendment to venue statute during litigation).

There is no plausible basis for Defendants to claim that they could not advocate for dismissal based on the existence of arbitration agreements when Defendants maintained the agreements on which they now rely. Accordingly, Defendants have waived this defense and their motion must be denied.

## II.  Defendants Have Waived the Defense Pursuant to Rule 12(h)

The consequence of Defendants' failure to previously assert that Plaintiffs' claims should be dismissed based on arbitration agreements is unmistakable—the defense is waived. See Rule 12(h). Indeed, courts have routinely treated motions to compel arbitration as motions alleging improper venue under Rule 12(b)(3) and found that waiver of the defense has occurred when it was not raised in a prior Rule 12(b) motion to dismiss.

In *Hayes, supra,* 2015 U.S. Dist. LEXIS 6715, at *3 n.1, the Honorable John A. Gibney, Jr. made clear that a motion to compel arbitration is a motion that properly must be brought under Rule 12(b)(3) for improper venue. This is because, unlike a motion under Rule 12(b)(6), a Rule 12(b)(3) motion allows the court to consider evidence outside of the pleadings. *Id.*

Although the Fourth Circuit Court of Appeals has not specifically addressed the issue, Judge Gibney's emphatic rule is consistent with several courts of appeal, which have likewise held that a motion to compel arbitration should be treated as a motion under Rule 12(b)(3), rather than as a Rule 12(b)(6) motion to dismiss or a Rule 12(b)(1) motion for lack of subject-matter jurisdiction. *See, e.g., Lint v. Offshore Specialty Fabricators*, 404 F.3d 898, 902 (5th Cir. 2005) ("[O]ur court has accepted Rule 12(b)(3) as a proper method for seeking dismissal"); *Continental Ins. Co. v. Polish S.S. Co.,* 346 F.3d 281, 282 (2d Cir. 2003) (affirming Rule 12(b)(3) dismissal regarding arbitration clause); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.1998), *cert. denied*, 525 U.S. 1093 (1999) (motion to dismiss based on forum selection clause must be brought under Rule 12(b)(3)); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (Rule 12(b)(3) motion proper method); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir.1995) (such motions are pursuant to Rule 12(b)(3)). *Cf. Palko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3rd Cir. 2004) (treating such motions as under Rule 12(b)(6)); *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44. 45 n.1 (3d Cir. 1991) (same). *See also* 2 MOORE'S 17 FEDERAL PRACTICE § 12.32[1] (treating forum selection clauses as under Rule 12(b)(3) is the "better approach").[1]

---

[1] Significantly, only one circuit has suggested, in *dicta* and without citation, that a motion under the Federal Arbitration Act to compel arbitration or stay litigation is not a Rule 12 motion. *See Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1383 & n.2 (10th Cir. 2009).

This Court should construe Defendants' instant motion as one made under Rule 12(b)(3), which is consequential as the arbitration defense was not raised in any of Defendants' prior motions, requiring this Court to find that the defense has been waived.  *See* Fed. R. Civ. P. 12(h)(1) (stating that a party waives any defense listed in Rule 12(b)(2) - (5) by failing to raise it in a motion under the Rule). Moreover, pursuant to Rule 12(g)(2), Defendants cannot assert a Rule 12 defense in a later-filed motion to dismiss. Accordingly, pursuant to Rule 12(h)(1), Defendants have waived any argument that Plaintiffs' claims must be dismissed due to arbitration, and they are prohibited from bringing this motion under Rule 12(g)(2).

### III.   The Arbitration Agreements Should Not Be Enforced

Defendants' motion should also be denied because the arbitration agreements Defendants' are attempting to enforce were obtained through improper, unilateral, and misleading communications with Plaintiffs. (*See* Defendants' Opposition to Plaintiffs' Motion for Conditional Certification, Dkt. Nos. 137–156.) In their Opposition, Defendants submit declarations from several current employees who claim that they signed these agreements choosing to be licensees or independent contractors because they want "control of their schedule" and "didn't want to have to clock in and out, and to be paid a wage rate, etc." (Dkt. No. 157-24, Page ID#2132.) These plaintiffs receive "payment from patrons in the form of tips, and…retain 100% of those tips." (*Id.* at Page ID#2133.)

These same types of "endorsements" were used by defendants in *Degidio*, where the court refused to enforce entertainers' arbitration agreements, noting that it was "particularly concerned by statements in the affidavits of employees who signed these agreements that suggest that they may have received inaccurate or incomplete information about the implications of participating in

the proposed class." *Degidio v. Crazy Horse Saloon & Rest., Inc.,* 2015 U.S. Dist. LEXIS 132558

*69 (D.S.C. Sep. 30, 2015). The court further observed:

> What is troubling about these statements is that they seem to indicate
> that potential class members have been presented with a
> false dichotomy. In other words, the statements imply that a number of
> the benefits described, a flexible working schedule, ability to keep
> tips, and ability to take tips home immediately are only available
> because the entertainers are independent contractors. Of course, the
> benefits listed above are not precluded by a finding that the
> entertainers are employees.

*Id*. at *70. The court further found that the agreements "evidence[d] Defendant's misleading, one-

sided presentation of the entertainers' legal status and options." *Id*. at *24. The court observed

that the agreements create "an illusion that…parties can simply contract out of the obligations of

the [FLSA] and other state and federal employment laws." *Id*. at *17. Specifically:

> In light of the Agreement's express mandate that entertainers "**ARE
> NOT . . . EMPLOYEE[S]**", it would be a stretch for entertainers
> reading this Agreement to believe that Plaintiff's allegations, as
> highlighted by Defendant, have any merit. Further, given the
> Agreement's representations of the negative conditions attached to
> an employee/employer relationship, common sense would likely
> dissuade entertainers from participating in litigation that is pursuing
> the recognition of such a legal status. In this context, it is not
> surprising that every entertainer who has performed at the Club
> since mid-November 2014 has signed the Agreement, and *not a
> single one* has opted out of the arbitration provision.
>
> ***
>
> In drafting the Agreement to present such a misleading impression
> of the entertainers' legal status and options, Defendant demonstrates
> how "unilateral communications with . . . potential plaintiffs can
> sabotage the goal of the FLSA's informed consent requirement by
> planting the slightest seed of doubt or worry through the one-sided,
> unrebutted presentation of 'facts.'"

*Id*. at *19, 21 (emphasis in original) (citing *Billingsley*, 560 Fed. Appx. at 924). Accordingly, the

*Degidio* court could not "in good conscience, enforce arbitration agreements that were drafted in

such an incredibly misleading manner…." *Id*. at *22.

In the instant matter, Defendants have submitted similar agreements that contain blatant misleading representations regarding Plaintiffs' employment status and should not be enforced. Titled "Performer Relationship Selection Agreements" and "Performer License and Temporary Space Lease Agreements," the agreements purport to show differences in choosing between being a "Performer" or "Employee" by disingenuously portraying the employee-employer relationship as more restrictive. In reality, and taking into account Plaintiffs' allegations in this case, both groups are subject to the same working requirements and offered similar compensation. (Dkt. No. 148-1, Page ID# 1341–44.) Both groups work for tips and gratuities they receive that are in excess of the "Performance Fees" that Defendants charge (*Id.* at Page ID#1342), they are required to pay house fees in order to perform there (*Id.* at Page ID#1359), both groups must notify club managers in advance of their schedules (*Id.* at Page ID#1350), and both groups are fined if they are tardy or fail to show up for work on their scheduled dates. (*Id.* at Page ID#1359.)  While Performers purportedly have more freedom and control over their work, they must abide by the club's established fixed fees and may not charge less without permission, although nothing in the agreement limits the Performer "from receiving tips or other gratuities in excess of the Performance Fees." (*Id.* at Page ID#1350 (emphasis added).)

The agreements also contain retaliatory provisions that subject potential plaintiffs to unconscionable financial obligations if they are found to be employees. For example, the agreements provide that, upon any ruling on the employment relationship, the Performer must remit to the club "all Performance Fees received by Performer at any time she performed on the Premises – all of which would have been collected and kept by the Club had they not been retained by Performer under the terms of this [Agreement] – and shall immediately provide a full accounting to the Club of all tip income which he/she received during that time." (*Id.* at Page

ID#1352.)  Additionally, "[a]ny Performance Fees that Performer fails to repay to the Club are deemed service charges to the customer and, as such, the Club shall be entitled to offset any wage obligations by any amount not returned by the Performer." (*Id.*)

These financially extortionate provisions are retaliatory and unconscionable to Plaintiffs who have never been paid any wages by Defendants and could never afford to challenge their employment relationship with Defendants, whether in a court of law or in arbitration. Indeed, these provisions amount to counter claims which are impermissible under the FLSA. *See Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 741-42 (5th Cir. 2010) (with the exception of overpayment of overtime premiums, set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010) (rejecting disgorgement counterclaims against employee; holding that employer cannot artificially lower employee's pay rate by designating portions of employee's earnings as non-wage income); *Conzo v. City of New York*, 667 F. Supp. 2d 279, 290 (S.D.N.Y. 2009) (describing permissible offsets under 29 U.S.C. 207(h)(2) for overtime premiums overpaid).

In an analogous case in which dancers sued an adult night club for wage and hour violations, a district court in Texas dismissed counterclaims in which the club attempted to offset the entertainers' earnings against the club's wage obligations. *See* Order, *Rafeedie v. L.L.C., Inc.*, No. 10 Civ. 743, Aug. 25, 2011, at 3. The *Rafeedie* court held that offsets against a defendant's minimum wage and overtime obligations are generally impermissible. *See also Willins v. Credit Solutions of America, Inc.*, No. 3:09 Civ. 1025, 2010 WL 624899 at *2 (N.D. Tex. Feb. 23, 2010) (dismissing defendants' counterclaims that the claimants were overpaid as improper in an FLSA action); *Marshall v. Wallace Oil*, No. 80 Civ. 451A, 1980 WL 2101, at *2 (N.D. Ga. Sept. 19,

1980) (granting Plaintiff's motion to strike Defendant's recoupment counterclaim because "neither set-off nor recoupment is permitted in an action for unpaid back wages under the FLSA").

Furthermore, the overwhelming majority of courts analyzing the characterization of customer payments to adult entertainers like the Plaintiffs have found that they are tips. *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 326–327 (5th Cir. 1993) (calling minimum dance fees "tips" in discussing an employer-employee relationship under the FLSA); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1358 (M.D. Fla. 1997) (both dance fees and discretionary additional amounts received from customers were "tips, not wages" and rejecting argument of club that dancers who earned $1,000 a week do not need minimum wage or overtime protection); *Reich v. ABC/York-Estes Corp.*, No. 91 Civ. 6265, 1997 WL 264379, at *6 (N.D. Ill. May 12, 1997) (mandatory $5.00 dance fees were tips in spite of the fact that they were "apparently not discretionary payments by customers as contemplated by the [FLSA] regulations."); *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D. Tex. 1995) (under FLSA, "[t]he fee that an entertainer charges for a table dance is more closely related to a tip than a wage."). Accordingly, these payments belong to Plaintiffs.

Finally, the parties to the agreements are limited to the particular Plaintiff and a single club, i.e., Hannah Cramer and Club Rouge. (*Id.* at Page ID#1344–45, 1347, 1357–58.) The agreements do not include any of the other clubs as parties, nor are any of the other clubs mentioned in the agreements. Accordingly, if this Court were to find the agreements are enforceable, they would be limited to arbitration of Plaintiff Cramer's claims against Club Rouge only.[2]

---

[2] The Agreements contain class and collective action waivers. Plaintiffs contend that these provisions should be rendered unenforceable as violative of the National Labor Relations Act. *Epic Systems Corp. v. Lewis*, 823 F.3d 1147 (7th Cir. 2016), *certiorari granted*, 137 S. Ct. 809 (2017). "Congress passed the FLSA to protect workers from overbearing practices of employers who had greatly unequal bargaining power over their workers," and "has expressed a policy that

**IV.  Even if Defendants' Motion Can Properly be Entertained, this Court Should Postpone Ruling Until, at a Minimum, Discovery Has Been Completed, and the Issue of Enforceability Has Been Properly Addressed**

Assuming, *in arguendo*, that this motion is procedurally proper, and the defense of compelling arbitration can be entertained, this Court should not rule on the motion at this time. Instead, it should postpone resolution until, at a minimum, discovery has been completed and a merits determination has been made regarding the enforceability of the purported agreements.

Arbitration is a "matter of contract" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011); *Steelworkers v. Warrior Gulf & Nav. Co.,* 363 U.S. 574, 582 (1960) ("[a]greements to arbitrate are matters of contract, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"), and the Federal Arbitration Act, and Supreme Court precedent, require that proffered agreements be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S. C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492–493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)." *AT&T Mobility LLC*, 563 U.S. at 339–40.

The procedure when there are disputed issues regarding the existence, creation and/or enforceability of an arbitration agreement is ordinarily to proceed through a trial. *See, e.g., Walker v. BuildDirect.com Techs., Inc.*, 604 Fed. Appx. 792 (10th Cir. 2015). Hence, "[w]hen parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is

---

FLSA plaintiffs should have the opportunity to proceed collectively." *See Degidio*, 2017 U.S. Dist. LEXIS 219018 at *13; 29 U.S.C. § 216(b).

warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). *See also SmartText Corp. v. Interland, Inc*., 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003) (motion to dismiss retained under advisement until "jury resolves the issue of whether an agreement to arbitrate was made.").

Even if there is no early indication that the agreement may be unenforceable, e.g., even when plaintiffs do not specifically assert in response to a motion to compel that the purported agreement is unenforceable, courts consistently refuse to consider merits-based arguments such as applicability and enforceability of an arbitration agreement until, at a minimum, discovery has been completed. This Court should therefore not postpone, much less deny, conditional certification, as the purported agreements are irrelevant at this stage. *See, e.g., Hernandez v. Immortal Rise, Inc*., No. 11-cv-4360, 2012 U.S. Dist. LEXIS 182348, at *5 (E.D.N.Y. Dec. 27, 2012) ("Next, defendants argue that the proposed class should be limited to . . . those who had not signed arbitration agreements . . . . However, these are issues of fact that should be determined during discovery rather than at this preliminary stage."); *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 U.S. Dist. LEXIS 118829, at*4 (S.D. Tex. Dec. 22, 2009) ("the Court refuses to consider the merits-based argument until discovery is complete."); *DiAntuono v. C&G of Groton, Inc.*, No. 3:11-cv-33, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (arbitration agreement has no impact on conditional certification stage); *Green v. Plantation of Louisiana, LLC*, No. 2:10-0364, 2010 WL 5256348, at *1 (W.D. La. Dec. 15, 2010) (same); *Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (declining to consider applicability or effect of purported agreement at conditional certification and notice stage); *Davis v. Novostar Mortgage,*

*Inc.*, 408 F. Supp. 2d 811, 817-18 (W.D. Mo. 2005) (court awarded conditional certification despite claim by defendant that most plaintiffs had signed agreements).[3]

Considering the remedial purposes of the FLSA, this Court could conduct a full merits determination of the validity and enforceability of the agreements after the completion of discovery. If this Court finds, after that determination, that some collective members are subject to arbitration, those Plaintiffs could be compelled to arbitrate, while the collective suit continues. Furthermore, although Plaintiffs' dispute that their claims are subject to arbitration, in the unlikely event this Court held otherwise, this action should be stayed rather than dismissed.

## CONCLUSION

Defendants' motion must be denied as procedurally improper, and this Court should find that Defendants' request that arbitration be compelled has been waived. Moreover, the arbitration agreements at issue should not be enforced because they contain misleading, prejudicial statements, and many were executed after this litigation was commenced. Alternatively, any determination regarding whether to compel arbitration, including whether a stay should issue, should await the conclusion of discovery and a merits determination regarding the applicability and enforceability of the purported agreements.

---

[3] Likewise, the pendency of a motion to compel arbitration does not automatically stay discovery, even if a defendant formally requests a stay. *See, e.g., Moran v. Flaherty*, No. 92 Civ. 3200 (PKL), 1992 U.S. Dist. LEXIS 14568, at *3 (S.D.N.Y. Sept. 25, 1992); *Thomas v. New York City Dep't of Educ.*, 09-CV-5167 (SLT), 2010 U.S. Dist. LEXIS 95798, at *7 (E.D.N.Y. Sept. 14, 2010).

Dated: New York, New York
        May 4, 2018

                                    _____/s/_____
                                    Justin Keating (VA Bar #75880)
                                    Beins, Axelrod, P.C.
                                    1030 15th Street, N.W.
                                    Suite 700 East
                                    Washington, DC 20005
                                    Tel: (202) 328-7222
                                    Fax: (202) 328-7030
                                    jkeating@beinsaxelrod.com

                                    LaDonna Lusher (*Pro Hac Vice* Admission)
                                    Caroline Turner (*Pro Hac Vice* Admission)
                                    Virginia & Ambinder, LLP
                                    40 Broad Street, 7th Floor
                                    New York, New York 10004
                                    Tel:    (212) 943-9080
                                    Fax:    (212) 943-9082

                                    **COUNSEL FOR PLAINTIFFS AND
                                    PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2018, I caused the foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OPT-IN PLAINTIFF HANNAH CRAMER'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

      Thomas M. Lucas
      Kristina H. Vaquera
      Milena Radovic
      Jackson Lewis, PC
      500 E. Main Street, Suite 800
      Norfolk, Virginia 23510
      Tele:   (757) 648-1445
      Fax:   (757) 648-1418
      thomas.lucas@jacksonlewis.com
      vaquerak@jacksonlewis.com
      milena.radovic@jacksonlewis.com

                          _____/s/_____

                         Justin P. Keating